## Allen v. Commonwealth.

(Decided April 13, 1917.)

### Appeal from Laurel Circuit Court.

Criminal Law—Motion for New Trial—Discretion.—In the dis-
position of a motion for a new trial on account of alleged bias
of a juror, the Court of Appeals will rely to a large extent upon
the sound discretion of the trial judge, and will not interfere
with this discretion, unless the evidence shows conclusively that
the trial judge arrived at an erroneous conclusion.

W. L. BRUNER for appellant.

M. M. LOGAN, Attorney General, and OVERTON S. HOGAN,
Assistant Attorney General, for appellee.

OPINION OF THE COURT BY JUDGE HURT—Affirming.

    The appellant, Mollie Allen, appeals from a judgment
of the Laurel circuit court, whereby she was adjudged
guilty of the crime of voluntary manslaughter and to im-
prisonment in the state reformatory for a period of not
less than five nor more than six years.  The indictment
against her, accused her and her husband, Henry Allen,
and other parties to the grand jury unknown, with the
murder of Maggie Allen.  The appellant and her hus-
band, Henry Allen, were brought before the court and
having each asked a separate trial, the Commonwealth's
Attorney elected to first try Henry Allen, and his trial
resulted in a judgment by which he was found guilty of
murder and his punishment for the crime fixed at im-
prisonment for life.  Afterward the trial of appellant
occurred, with the result as above stated.  The only
error relied upon for a reversal of the judgment is that
the court erred in refusing to grant a new trial.
    First.  Because two of the jurors were biased against
the appellant; that one of them had formed and expressed
an opinion adverse to the appellant before he was ac-
cepted upon the jury, and another of the jurors was re-
lated by marriage to Lee Weaver, who was associated

with the appellant and her husband, Henry Allen, upon the night upon which Maggie Allen was killed, and who was, also, slain upon the same night, but not at the same place.

Second. Because the verdict of the jury was not sustained by a sufficiency of evidence and was flagrantly against the evidence.

Other grounds for reversal are urged in the brief of the attorney for appellant, but the above stated are the only grounds which were relied upon by her in her grounds for a new trial filed after the rendition of the verdict and judgment and are the only ones which can be considered upon this appeal.

(a) In support of the grounds for a new trial the appellant filed the affidavits of Lottie Adams, George Allen, Alexander Allen, Ben McFarland and Elmer Joseph. It is stated in the affidavit of Lottie Adams, that previous to the trial of appellant, Everett Acton, a juror, who presided in the trial, came to her mother's home to sell to her mother or brother a mail box, and while there stated in the presence of herself, mother and brother, that Henry Allen and appellant were the parties, who had killed Weaver and Maggie Allen, and that both ought to be electrocuted; that they had been keeping a bawdy house and that it was a subject of wonder that other crimes had not been committed about their place; that appellant was the ringleader and the guiltier of the two. The affidavit of George and Alexander Allen stated that at a time and place other than that mentioned by Lottie Adams, the juror, Action, had made a statement to them similar to the one testified to by Lottie Adams. The affidavits of Ben McFarland and Elmer Joseph stated that the juror had made similar expressions in their presence at a stable in London. To combat the force of these affidavits, the Commonwealth's Attorney filed the affidavit of the juror, Acton, in which he denied that he had ever had any conversation with Lottie Adams, George Allen, Alexander Allen, Ben McFarland or Elmer Joseph, or in the presence or hearing of any of them, in regard to the guilt or innocence of the appellant, and denied that he had made use of the language, either in form or in substance, attributed to him by these parties in their affidavits, and further stated that he was not acquainted with the circumstances of the crime for which the appellant was tried, and did not have

# KENTUCKY REPORTS.

S

against him were unworthy of belief upon their oaths. It can not fail to be observed that although the characters of Lottie Adams, Ben McFarland, Alexander Allen and George Allen were directly assailed, and that the witnesses mentioned stated that their characters were bad for truth and good morals, and as to two of them, that they were convicted felons, there was no attempt made to sustain their characters by evidence contradicting the statements of witnesses by whom they were impeached.  Alexander Allen and George Allen were shown to be brothers of Henry Allen, who had been previously tried and convicted of the murder, which was charged in the indictment upon which Mollie Allen had, also, suffered a conviction.  In the disposition of a matter of this kind this court must necessarily rely to a large extent upon the sound discretion of the trial court.  The trial judge had seen and observed the juror, who is assailed, and observed his conduct during the trial, is acquainted with his character, as well as the witnesses who make the charges against him. This court will not interfere with the discretion of the trial court in such a matter, unless it is evident that it came to an erroneous conclusion, and a fair trial has not been had because of the bias of the juror.  Mansfield v. Commonwealth, 1C3 Ky. 488; Brannon v. Commonwealth, 162 Ky. 353; Hendrickson v. Commonwealth, 165 Ky. 665.  In the instant case, if it should be true, that the juror, Acton, had expressed the opinion attributed to him by the witnesses relied upon by the appellant, it is clear that he entered the jury box with an opinion as to the way in which the trial should conclude, and that he entertained a strong feeling against the accused, and it can not be doubted, that if the trial court had believed the accusations made against him, it would have granted the appellant a new trial, but the trial court believed the evidence offered by the Commonwealth rather than that offered by the appellant, and came to the conclusion that the charges were without foundation, and in this it seems that it did not abuse its discretion.

(b)  In the grounds for a new trial it is stated that Robert Seet, one of the jurors, was an uncle by marriage of Lee Weaver, who was killed by some one on the same night upon which Maggie Allen was killed, and hence, that it was to be inferred, that the juror entertained a bias against the appellant.  It does not, however, appear

from the record, who it was that killed Weaver, and there is no indication that appellant was in any way the author of his death, except that Weaver, who was found dead near Pittsburg, had in the early part of the night been in company with appellant and her husband and others at the houses of Mary Burdine and Ben McFarland, on Wood's Creek. The charge that Seet was an uncle of Weaver is not supported by an affidavit or evidence of any kind, and hence it can not be said to be true. Further, if Seet in fact bore such relationship to Weaver, the appellant does not show that she was unacquainted with such fact when he was accepted upon the jury.

(2) There was evidence heard, which showed that Maggie Allen, the deceased, was a divorced wife of Henry Allen, the husband of appellant; that appellant and the deceased had had several personal altercations growing up out of the fact that one was the discarded wife of Henry Allen and the other his then wife; that in one of these altercations the appellant struck the deceased and Henry Allen being present, offered the appellant a pistol with which to shoot the deceased; that appellant had stated that she had upon one occasion whipped the deceased and had on other occasions been heard to threaten the deceased with violence and with death; that on the night of the homicide appellant and her husband, without any reason being given therefor, except that Lee Weaver requested them to do so, accompanied Weaver and a woman named Burdine and a man named Joseph, to the dwelling of Mary Burdine, where deceased was then residing and appellant inquired for the deceased; that appellant and her associates were under the influence of intoxicants, and her husband procured whiskey at Mary Burdine's; that they then went near to the dwelling of Ben McFarland, where deceased then was, when the appellant and the Burdine woman went to the house of McFarland and made inquiry for deceased; that appellant and her associates then went into the dwelling of McFarland, but deceased left the house from fear, before she was seen by appellant or any one with her; that appellant and those with her left McFarland's and returned to the Burdine house, and about fifty feet from the door came in contact with the deceased, where a pistol was heard to be fired and deceased was heard to scream, "Lord, have mercy upon me, Henry." The corpse of the deceased was found

upon the following morning. There were scratches and abrasions of the skin about her face and neck and side of her head, and splotches of blood upon her clothing. The appellant admits that she was present when deceased was killed, but claims that her husband, Henry Allen, alone committed the murder. Lee Weaver, who she claims was also present, was killed the same night, a mile or two from the place where Maggie Allen was killed. Other facts and circumstances were in evidence, which are unnecessary to be related, but suffice it to say, that considering all the facts and circumstances, and the animosity proven to have existed on the part of appellant toward deceased, and her numerous threats against her, and her inquiries for her at the house of Burdine and McFarland, and the fate which overtook deceased upon their meeting, and the nature of many of the wounds, there was an ample sufficiency of evidence to take the case to the jury. Vowels v. Commonwealth, 83 Ky. 193; Patterson v. Commonwealth, 86 Ky. 313; Spencer v. Commonwealth, 122 S. W. 800; Commonwealth v. Murphy, 109 S. W. 353; Commonwealth v. Boaz, 140 Ky. 715; Gordan v. Commonwealth, 136 Ky. 508. The weight to be given to the facts and circumstances proven was a matter within the province of the jury, and the evidence was sufficient to support the verdict.

The judgment is, therefore, affirmed.