### Baker v. Commonwealth.

(Decided October 11, 1921.)

### Appeal from Bell Circuit Court.

Appeal and Error—New Trial—Discretion.—The Court of Appeals will not interfere with the decision of a trial judge, on a motion for a new trial, on account of the actual bias of a juror, discovered after a verdict, unless the evidence is clear and convincing, that the trial judge abused his discretion.

SAWYER A. SMITH and JOHN HOWARD for appellant.

CHAS. I. DAWSON, Attorney General, and THOS. B. McGREGOR, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY CHIEF JUSTICE HURT—Affirming.

The appellant, Dan Baker, was indicted for the crime of murder, committed as alleged by killing one John H. Hensley, and being tried upon that charge, was found guilty by the jury of voluntary manslaughter, and his penalty fixed at imprisonment for twenty-one years. A judgment was rendered accordingly. The appellant in due time made a motion to set aside the verdict of the jury and the judgment of the court, and to grant him a new trial, but this motion was overruled, and he has appealed to this court. Several grounds were set forth in the motion for a new trial, but all are without any merit, except one which the appellant seems to wholly rely upon to obtain a reversal of the judgment. This ground is based upon the alleged actual bias of one of the jurors,

who tried the case and rendered the verdict. It is alleged that this juror, before and at the time he was called as such, had formed and expressed an opinion to the effect that appellant was guilty of the cirme of which he was accused, and ought to be punished therefor, and entertained a strong prejudice against the appellant, but that appellant did not know of the bias of the juror until the day following that upon which the verdict was made and the jury discharged. He further claimed that the juror was examined upon his *voir dire* and then stated that he had no opinion touching the appellant's guilt or innocence, and did not entertain any bias or prejudice against the appellant or his cause. It is furthermore insisted that appellant would not have accepted the juror, but would have excused him if he had known of the bias on the part of the juror. It is insisted earnestly that the bias of this juror prevented the appellant from having a fair and impartial trial. To sustain the charge that the juror was biased against him and his cause, appellant filed his own affidavit setting forth the bias and prejudice of the juror and his want of knowledge of it until after the trial. With it there were filed the affidavits of T. I. Green and Harvey Elliott, each of whom deposed that two or three days after the appellant committed the homicide for which he was tried and convicted, that the juror, Miller, in their presence, said: "That Dan Baker went to the barber shop and got his pistol and went to John H. Hensley's room and stuck his arm and shoulder around the door and shot Hensley while he was sitting in a chair, and that it was too bad to kill a man that way, and he wished he could get on the jury to try Dan Baker, and if he did, he would hang him or send him to the electric chair, as he was a bad man and ought not to be at large." An affidavit of R. A. Sowders was, also, filed in which the affiant stated that on the day the homicide was committed, he, Sowards, related to the juror, Miller, the manner in which, according to his information, the killing had occurred, and that Miller said, "That it was a bad murder and Baker would get life or the electric chair." About fifteen days before the trial, Sowders claimed to have had another conversation with Miller in which Baker was mentioned, and that Miller then said, "That he would like to be on the jury for some of these murder cases, and if he was on the jury some of them would never remember killing another man." The Commonwealth's Attorney, in opposition to the grounds

of the motion, filed the affidavit of Miller, and in it Miller unequivocally denied that he had any of the conversations or made any of the statements attributed to him by Green, Elliott or Sowders, and, also, deposed that the only conversation he had ever had with Green about any indictments for murder was about the one which was then pending against Green, and that Green said in that conversation "That none of the murderers were going to jail because they were all going to stick together." Miller also, deposed that he left his home in Middlesboro on the morning of the day of the homicide before the time of its occurrence, and went into the country and remained in church and at his brother's the entire day, not returning until late in the night, and thus had no opportunity for a conversation with Sowders about it on that day, and, also, thus demonstrated his ability to call other witnesses to corroborate his statements that he did not see Sowders upon that day. Sowders then made another affidavit, in which he deposed that he was mistaken when he stated in the first that he had heard Miller converse about the homicide on the day of its occurrence, but fixed the time on the day following, when no one was present, except him and Miller. The trial judge, after a consideration of the motion and the grounds set forth in support of it, was of the opinion that the charge that Miller entertained a bias toward the defendant, and had formed and expressed an opinion before being called upon the jury, was not a fact and overruled the motion. There can be no doubt that if the juror made such expressions as are attributed to him, they incontrovertibly evidence such a bias upon his part as to render him unfit to sit as one of the triers of appellant, and he should not have concealed his previously formed opinion of the guilt of appellant, and his misconduct in so doing deprived appellant of such a fair and impartial trial as the law contemplates and undertakes to give. Netter's Admr. v. L. & N. R. R. Co., 134 Ky. 678; Vance v. Haslett, 4 Bibb 191; Taylor v. Combs, 20 K. L. R. 1828; Mansfield v. Com., 163 Ky. 495. The trial judge, if he had believed that the juror made the expressions, would certainly have set aside the verdict and granted a new trial. It became his duty to decide whether the alleged biased juror was thus disqualified so as to impeach the verdict. As was said in Mansfield v. Commonwealth, *supra*, "The evidence that would justify the trial court in setting aside a verdict on the ground that one of the jurors had expressed opinions that would dis-

qualify him from sitting in the case, if they had been known, should be very clear and convincing when first brought to the attention of the court after verdict. If new trials could readily be secured after verdict on grounds like these, the temptation to procure the needed evidence and the ease with which it could be procured would result in many new trials being granted on this ground when the verdict should not be disturbed."

Again in Allen v. Commonwealth, 175 Ky. 49, it was said, "In a disposition of a matter of this kind, this court must necessarily rely, to a large extent, upon the sound discretion of the court. The trial judge had seen and observed the juror who is assailed, and observed his conduct during the trial, is acquainted with his character as well as the witnesses who make the charge against him. This court will not interfere with the discretion of the trial court in such a matter, unless it is evident that it came to an erroneous conclusion and a fair trial has not been had because of the bias of the juror." The evidence does not convince clearly that the trial judge arrived at an erroneous conclusion. There are several things arising out of the evidence which are calculated to shatter belief in the truth of the statements of these impeaching witnesses. Green and Elliott fixed the place where Miller made the expressions which they attribute to him at the same time and place, and as having been made to them when together. Green had an indictment for murder then pending against him, and Elliott was a boarder at his hotel. According to Miller, Green had expressed the intention of standing by the various murderers then in trouble in the community, and this Green does not deny. The affidavit of the county attorney, which is not denied, shows that Green was carrying out his purpose, and was present in court and taking an active interest in the defense of appellant, and was consulting with his attorneys in the selection of the jury, and was present and presumably advised the acceptance of Miller as a juror. It is not believable that Green knew of Miller's bias and prejudice by having heard him make the expressions which he now attributes to him, and then stood by and advised or consented to his acceptance as a juror. If he had heard him make such expressions he certainly would have communicated the fact to appellant's attorneys, and they would have taken steps to have excluded him from the jury. Sowders, after showing with particularity how he was able to fix the time when Miller made the ex-

pressions to him, changed the time by another affidavit when it was discovered that the Commonwealth would be able to prove by other witnesses than Miller that Sowders had no opportunity to have heard any expression from Miller on the day when he first deposed that he conversed with Miller. The circuit judge was, also, acquainted with the character of Sowders. It should not be overlooked that Miller denies in toto all the conversation which Green, Elliott and Sowders attribute to him, and the fact that the court accepted his statements as against those made by them, under the facts which appear on the record, furnishes no ground to hold that the court abused its discretion in so doing. Brannon v. Com., 162 Ky. 353; McKee v, C. F. & S. R. Co., 161 Ky. 711. The record shows the homicide to have been a very useless and unnecessary killing, and the penalty not disproportioned to the crime.

The judgment is, therefore, affirmed.