## Lynch v. Commonwealth.

(Decided June 19, 1923.)

### Appeal from Estill Circuit Court.

1. Homicide—Conviction of Manslaughter Held Not Flagrantly Against the Evidence.—Where the evidence for the prosecution showed defendant shot and killed deceased without justification

or excuse just as deceased stepped from a church door, a verdict finding defendant guilty of manslaughter was not flagrantly against the weight of the evidence, though the evidence for the defense showed the shooting was justified in defense of defendant's father.

2.   Criminal Law—Refusal of New Trial for Bias of Jury Discovered After Verdict Not Disturbed Unless Discretion was Clearly Abused. —Since the trial court has the opportunity to observe the conduct of a juror during the trial and is usually acquainted with his standing in the community as well as that of the witnesses who make the charge, and is therefore in a better position to reach a proper conclusion than the Court of Appeals, the decision of the trial court in granting or refusing a new trial on account of actual bias of a juror discovered after the verdict will not be interfered with unless the evidence is clear and convincing that the trial court abused its sound discretion.

3.   Criminal Law—Evidence Held Not to Show Abuse of Discretion in Denying New Trial for Bias of Juror.—Where the evidence as to whether a juror who sat in the trial in a homicide case had made a declaration showing actual bias before he was called as a juror was about equiponderant, there was no clear and convincing showing of abuse of discretion in refusing a new trial on that ground.

KELLY KASH, R. W. SMITH, L. C. LITTLE and F. J. STEVENS for appellant.

THOS. B. McGREGOR, Attorney General, and CHAS. W. LOGAN, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY JUDGE CLAY—Affirming

Appellant was convicted of manslaughter and his punishment fixed at fifteen years' confinement in the state reformatory.

It is first insisted that the verdict is not supported by the evidence.

The facts are these: Appellant and deceased, Sterling Marcum, lived in the same neighborhood, and their relations had always been friendly. On the night of October 21, 1922, religious services were being conducted in the Lynchtown schoolhouse, which is located in Estill county not far from the Jackson county line. Appellant and the deceased attended the meeting, and among others present were Luther Marcum, brother of the deceased, and Marion Lynch, father of appellant. According to the evidence for the Commonwealth, Marion Lynch and Luther Marcum engaged in a quarrel on the outside of the house while the services were going on. Later on,

and before the services were concluded, the quarrel was renewed and culminated in a fist fight between them. Shortly after the fight was over and the participants had quieted down, the deceased, who had been in the house and had had nothing to do with the fight, started for the door, and on passing out the door was shot by appellant, who fired two shots, one of which struck him in the abdomen on the left side and caused his death. At the time the deceased was shot, he had no knife in his hand, and was not doing anything to anyone. In his dying declaration, deceased stated that appellant shot him, and when asked what he (deceased) was doing, said: "Not a thing in the world; only just stepped out the door." In addition to the above facts, which are testified to by a number of witnesses, it was shown that about fifteen minutes before the homicide appellant made the statement that he would kill the deceased before he got away from there that night, and that after the shooting appellant's father said: "What in the world did you do that for, Archie," whereupon appellant replied: "I wasn't aiming to see you pecked around on."

On the other hand, appellant's version of the affair is as follows: At the time, and immediately before, the shot was fired, his father and Luther Marcum, who were in front of the door and within range of the light shining from the inside of the house, were engaged in a difficulty. The deceased came to the door with a knife in his hand and said: "I will cut his G— d— guts out." The deceased then rushed up behind appellant's father and cut at his back with a knife. When the deceased cut at his father the second time appellant fired for the purpose of frightening him and causing him to desist, but as deceased continued to cut at his father he fired the second shot, which struck deceased. Appellant's account of the difficulty was corroborated by a number of witnesses, one of whom claims to have found a knife on the floor after the difficulty.

It is clear from the foregoing statement of the facts that if the testimony of the witnesses for the defense be true, the homicide was justifiable on the ground that appellant was acting in the defense of his father, but if the witnesses for the Commonwealth are to be believed, the homicide was without justification or excuse. In view of the conflict in the evidence, it was peculiarly the province of the jury to determine whether appellant was guilty or not, and, if guilty, whether he was guilty of

murder or manslaughter, and to fix his punishment within the limits authorized by the instructions, and we are unable to say that the verdict is flagrantly against the evidence.

Another insistence is that the court should have granted appellant a new trial because of the misconduct and bias of the juror, John Harris. In support of this ground appellant filed the affidavit of George Harris, Jr., who stated that he was a brother of the juror, John Harris, and that shortly after the killing of Marcum he and his wife, Flossie Harris, and P. A. Wolfenbarger and John Harris were together, that P. A. Wolfenbarger related the details of the killing in their presence, when John Harris then and there made the statement, "He (Lynch) ought to be hanged." Supporting the affidavit of George Harris, Jr., is the affidavit of his wife, Flossie Harris, who claims to have been present and to have heard John Harris make the same statement. Millard Arvine, a nephew of John Harris, also gave an affidavit to the effect that he heard John Harris's wife tell him that he ought not sit on the jury trying appellant, but that John Harris said that he was going to sit on it if he could, and that this occurred on the night before the trial was had. On the other hand, the Commonwealth filed the affidavits of John Harris, Haley Harris, his wife, P. A. Wolfenbarger and Sarah Lunsford. In his affidavit John Harris denied the statements of George Harris, Jr., Millard Arvine and Flossie Harris. His wife, Haley Harris, swore that at no time did she hear her husband make any statement that Archie Lynch ought to be hanged, or express any opinion as to the merits of the case. She further swore that she did not tell her husband that he ought not sit on the jury trying said Lynch, and that her husband did not say he wanted to sit on the jury. P. A. Wolfenbarger swore that he did ride in a car with George Harris, Jr., John Harris and others; that John Harris was driving the car and affiant was on the rear seat. Affiant was telling in a general way to the crowd about the killing of Marcum at Lynchtown on the night before, but that he did not remember that John Harris made any remark or any comment whatsoever on the conversation. Sarah Lunsford swore that she was the mother of Haley Harris, the wife of John Harris; that Millard Arvine was at her home the night before the trial; that she was present and in hearing of all conversations between John Harris and Millard Arvine at all

times during Arvine's stay at the home of John Harris, and that she did not hear Mrs. John Harris tell her husband that he ought not to sit on the jury trying Lynch, and she never at any time heard John Harris express . any opinion about the case.

As the trial court has the opportunity to observe the conduct of the juror during the trial, and is usually acquainted with his standing in the community, as well as that of the witnesses who make the charge, and is therefore in a better position than we are to reach a proper conclusion in the matter, it has become the settled rule of this court not to interfere with the decision of the trial court in granting or refusing a new trial on account of the actual bias of a juror discovered after the verdict, unless the evidence is clear and convincing that the trial court abused a sound discretion. Baker v. Commonwealth, 192 Ky. 478, 233 S. W. 1046; Mansfield v. Commonwealth, 163 Ky. 488, 174 S. W. 16; Allen v. Commonwealth, 175 Ky. 46, 193 S. W. 650. An examination of the foregoing evidence on the question will show that the most that can be said is that the evidence *pro* and *con* is about equiponderant, and that being true, it is at once apparent that a clear and convincing case of abuse of discretion is not presented.

On the whole we find no error in the record prejudicial to the substantial rights of appellant.

Judgment affirmed.