## Brannon v. Commonwealth.

(Decided January 27, 1915.)

### Appeal from Bourbon Circuit Court.

1. Contempt—What Will Constitute.—Such acts or conduct as will amount to disrespect of or indignity to the judge or court, or interference with or disobedience of the processes, orders or judgment of a court, or some obstruction of the due and proper administration of justice in a pending case, or some misconduct of an officer of a court, will constitute contempt of court.

2. Contempt—Assault and Battery Upon a Witness—When a Contempt of Court.—If a defendant criminally prosecuted, commits an assault and battery upon a witness for the Commonwealth, either as a punishment for having testified against him under an indictment then pending, or to prevent his testifying against him in a future trial under an indictment then pending, such assault and battery will constitute a contempt of court, for which the court in which the indictments were pending has the power to proceed against him by rule and summarily try and punish him. And if, in the judgment of the court, its power as such is inadequate to the infliction of such punishment as the contempt deserves, it has the right to submit the matter to the determination of a jury.

3. Trial—Pending Case—What Is.—The return of a verdict finding the defendant in an indictment guilty and fixing his punishment, does not terminate the case, nor does the entering of a judgment upon the verdict finally dispose of the case; the indictment is still pending until the expiration of the time given the defendant for filing a motion and grounds for a new trial, which, in a criminal case, may be done at any time before the ending of the term.

4. Contempt—Punishment—When Not Excessive.—Evidence examined and held sufficient to show that the punishment, consisting

of a $1,000.00 fine and six months' imprisonment in jail, inflicted by the verdict in this case, is not excessive.

DENIS DUNDON, JOHN S. WILLIAMS and HAZELRIGG & HAZELRIGG for appellant.

JAMES GARNETT, Attorney General, and ROBERT T. CALD-WELL, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY JUDGE SETTLE—Affirming.

The appellant, T. F. Brannon, under a rule from the Bourbon Circuit Court, was tried by a jury and convicted of criminal contempt, his punishment being fixed by the verdict of the jury and judgment of the court at a fine of $1,000.00 and six months' imprisonment in the county jail. Following the return of the verdict appellant filed motion and grounds for a new trial, the grounds being: (1) The acts proved did not constitute a contempt of court; (2) the court erred in instructing the jury; (3) the punishment was so excessive as to show that the jury were actuated by passion or prejudice in fixing it. The motion for a new trial was overruled. Thereafter, at the same term of the court, the appellant filed his own and other affidavits and moved the court to set aside the order overruling the motion for a new trial, and renewed the motion for a new trial, both of which motions the court overruled, to which ruling the appellant excepted. The latter, being dissatisfied with the judgment of conviction and the several rulings of the court referred to, has appealed.

The ruling of the court as to the supplemental motion for a new trial will first be disposed of. The affidavits filed in support of this motion stated, in substance, that one of the jurors had previous to the trial said in their presence, "that he believed that the defendant should be given the limit." The juror by affidavit denied making the statement, or that he entertained prejudice toward appellant, admitting, however, that he had inquired of a former Commonwealth's attorney what punishment could be inflicted for criminal contempt and was told by the latter that it was unlimited. It also appears from his affidavit that this admission, with the further statement that he had not made up his mind as to the guilt or innocence of appellant, was made by him when taken upon the jury, and that on appellant's trial he unavailingly exerted his influence with other members

of the jury to reduce the punishment below that fixed by the verdict.

It is, however, insisted for appellant that so much of the juror's affidavit as related to his efforts to reduce the punishment inflicted by the verdict was incompetent, but we do not so regard it. The competency of such evidence was considered by us in Gleason v. Commonwealth, 145 Ky., 128. In the opinion it is said:

"By the affidavits of three persons filed in support of this ground (disqualification of a juror) it was stated that J. M. Morris, a member of the jury by which appellant was tried, expressed before the trial and before he was accepted as a juror the opinion that appellant was 'guilty of the murder of George Courtney and should be punished therefor by being hanged or sent to the penitentiary for life.' Morris gave an affidavit denying that he formed or expressed any opinion as to appellant's guilt or innocence before the trial. In addition, there were filed the affidavits of several members of the jury from which it appeared that Morris, at no time during the trial, manifested any bias or prejudice against appellant, but that, on the contrary, he was largely instrumental in influencing several of the jury, who were in favor of finding appellant guilty of murder and punishing him accordingly, to agree to a verdict of voluntary manslaughter. We are of opinion that the affidavits of the other jurors were properly admitted as evidence on the charge of bias against Morris. The affidavit or oral testimony of a juror will not be received to impeach a verdict or to impeach a fellow juror's conduct, but will be admitted in support of a verdict attempted to be impeached by other testimony, whether the juror's testimony goes to deny or explain misconduct during retirement. We are aware that this doctrine does not meet with favor in some of the States, but we gave it our approval in Howard v. Commonwealth, 24 R., 612, and have since adhered to it. In elaboration of this doctrine Mr. Wigmore, in his valuable work on Evidence (Vol. 4, Sec. 2354, Sub-sec. 4), says: 'Moreover, this object of disproving bias alleged to have existed before trial may be attained by showing expressions and conduct during retirement as an evidential fact relating back and negativing the supposed prior bias. But where the object is to determine the grounds or motives of the verdict as in themselves important for sustaining it

(for example to show that a certain illegal paper or erroneous charge did not influence the verdict), here the other principle (ante, Sec. 2349) applies to forbid this. The distinction is that in the former case the juror's expressions are not considered in their aspect in establishing motives for the verdict, but merely as part of his whole conduct going to determine the question of his former bias.' 11 Am. & Eng. Ency. of Law, 1008.''

If the conduct of the juror in attempting to influence the jury to inflict a lighter punishment than was awarded by the verdict, could properly have been shown by the affidavit of other members of the jury, as held by the authorities, *supra*, it was clearly competent to show it, as was done in this case, by the affidavit of the juror himself. Under the circumstances it was necessary for the trial court to determine whether the juror alleged to be biased was disqualified to such an extent as to impeach the verdict and give cause for setting it aside. The matter was one that addressed itself to the discretion of the court. Some weight must be given to the court's knowledge of the conduct of the juror during the trial and its acquaintance with the character of the juror and those of the three personal friends of appellant by whose affidavits his disqualification for service upon the jury was attempted to be shown, and the fact that the court accepted the statements contained in the juror's affidavit in preference to those contained in the affidavits of the three witnesses of appellant, gives us no ground for holding that the ruling of the court on this point against appellant was error. In other words, we are unconvinced by anything appearing in the record that the ruling of the court in refusing to set aside the previous order overruling the motion for a new trial was an abuse of discretion or prejudicial to the rights of appellant. McKee v. C. F. & S. R. Co., 161 Ky., 711.

Appellant's main contention, that the acts for which he was convicted did not constitute contempt, cannot prevail. To intelligently pass upon this contention consideration of the evidence will be necessary. It appears that there were three indictments returned in the Bourbon Circuit Court against appellant, who was the keeper of a saloon, each charging him with an unlawful sale of liquor. C. P. Cook was an important witness for the Commonwealth in each of the three cases referred to. Two of the cases had been tried, one of the trials

resulting in appellant's acquittal and the other in his conviction, Cook being the principal witness against him in each of the cases. The third case was continued. The following excerpts from the testimony of Cook in the instant case will indicate the acts constituting the alleged contempt:

"Q. This rule charges Mr. Brannon with contempt of court for striking you after you had left the court room here. Just tell what those facts were, if he struck you, Mr. Cook How it came up, and how long after the trial of this case was it? A. A very few minutes. I walked up street before the jury had brought in a verdict. After I testified I walked up street, and I stopped on the corner of Seventh and Main to talk to Mrs. Sims Wilson. She stopped me and asked me about a certain matter, I have forgotten what it was now, perhaps an order, and just as I started to walk on to get on the other side of the street, Seventh street, going up, Mr. Brannon came diagonally across the street. I turned and saw him, he was almost to me, and he says, 'God damn you, I ought to whip you, and I am going to do it.' And with that he struck me on the jaw here, and then he struck me here, and knocked me down and kicked me twice. Q. Where did he kick you? A. Kicked me in the back. * * * As soon as I got up, he shook his fist in my face and says, 'God damn you, I am going to give you this every time that I meet you.' * * * * When he first struck me he said, 'You God damned s— of a b——, I ought to whip you, and I'm going to do it.' Q. What did you do? A. Nothing whatever. And said nothing. * * * Q. Did you or not have an opportunity to defend yourself before he struck you? A. No, sir; he struck me just as he said; he says, 'You God damned s— of a b——, I ought to whip you, and I'm going to,' and with that he struck me."

With respect to this transaction appellant testified as follows:

"Q. Now, tell just how you met Mr. Cook there at the corner of Seventh and Main streets, and what was said between you there, and what was done? A. Well, I was going up on the west side of Main street, from the court here. When I left the courthouse I went up Main street on the west side until I got to Seventh street. My place is on the opposite side of the street, and I was crossing over and I met—I never saw Mr. Cook until I

run right into him between Seventh street—between the two corners. Q. You mean on the north side or the south side of Seventh street? A. Yes, sir. Right in the middle of the crossing. I said to him, 'You dirty little cur, you lied. You know you lied.' And he called me another liar, and as he did I hit him. I never hit him but once. I hit him the first time this way; then I hit him with the left hand the second time, and that was all that I done. Q. Did you knock him down? A. Yes, sir. He fell on his back. Q. Did you kick him at all? A. I did not, sir. * * * Q. What else did you say to him there at the time? Did you say that you were going to whip him every time you saw him? A. I don't think I did.''

Appellant also testified, in substance, that he did not threaten Cook with any violence, that he had no purpose of intimidating him from testifying in the remaining case pending against him, and that he intended no contempt of the court. On cross-examination he was asked:

''Q. You say that you didn't strike Mr. Cook for the purpose of intimidating him from giving any further testimony. It is a fact that you did strike him for having testified? A. No, sir; never. Q. What did you strike him for? A. Just because he told a lie. That's it. Q. Then you did strike him for the purpose of punishing him for having testified against you, if you struck him for having told a lie, didn't you? A. I thought it was all over and everything settled, and I had no idea of doing anything to wrong this court.''

Cook's testimony was corroborated in the main by three eye-witnesses of the assault, one of whom heard appellant use the insulting and abusive epithets and language applied to Cook and saw him knock him down and kick him. The others were not close enough to hear what was said, but they saw Cook knocked down and kicked by appellant, and all three witnesses testified that the assault was unprovoked by anything that Cook did, and that he made no effort to defend himself against the attack.

It should here be remarked that at the time the assault and battery was committed by appellant upon Cook there was still pending one of the indictments against the former under which he had not been tried, and that Cook's name appeared on this indictment as a

witness; and it was known to appellant that he would, upon the trial of the case at the next term, be called on to again testify as a witness in behalf of the Commonwealth against him. Appellant's trial under one of the other indictments had, as previously stated, resulted in a verdict in his behalf, but the trial of the case in which he was convicted had, according to his testimony, been concluded but a few minutes before he committed the assault and battery upon Cook. According to Cook's testimony, the attack upon him occurred very soon after he had left the courthouse for his place of business, and that at the time of his leaving the courthouse the jury which convicted appellant had not returned a verdict. It is true the case in which appellant was convicted of unlawfully selling liquor had, at the time of the assault, been tried, but it had not been finally disposed of, for the judgment had not then been entered upon the verdict; and, as, under Section 273, Criminal Code, appellant had the right to make application for a new trial at any time during the term, which continued for some days thereafter, the case cannot be said to have been finally disposed of until the time allowed by the Code for filing motion and grounds for a new trial expired, which ended with the close of the term.

So it is apparent that at the time of the assault upon Cook by appellant there were two cases pending against him in the Bourbon Circuit Court, one of which had been disposed of only in part, and the other continued for trial at the succeeding term, in which Cook was an important witness for the Commonwealth; and it is manifest from what he said to Cook at the time of assaulting and knocking him down and kicking him, and his threat to repeat it at all future meetings between them, that the purpose of the attack upon the latter was not only to punish him for previously testifying against appellant in the two cases which had been tried, and one of which had not been finally disposed of, but also to intimidate him with a view of influencing his testimony, or of preventing his giving it, on any future trial that might take place under the indictment which had been continued.

There appears to be no authority in this jurisdiction other than Melton v. Commonwealth, 160 Ky., 642, as to what constitutes the pendency or non-pendency of an action or proceeding, with respect to which a con-

tempt was charged to have been committed, but the question seems to have been decided in other jurisdictions, a leading case on the subject being that of State of Washington v. Tugwell, 19 Wash., 238, 43 L. R. A., 717. In that case the respondent was accused of publishing a libelous article six days after the reversal of a judgment by the Supreme Court of the State of Washington, which attacked the court because of the reversal. It appeared, however, that the publication, though occurring after the reversal, was made before the court had acted upon a petition for a modification of the opinion, final judgment upon which was not rendered until March 2, 1898, the remittitur issuing March 9, 1898. In rejecting the respondent's contention in the contempt proceedings, that the case, with respect to which the contempt was charged to have been committed, was not pending on appeal at the time the article was written, the court said:

"The first opinion in the case was followed by a petition for rehearing on the part of the appellant. Leave to print and file additional briefs was granted by the court, and the case assigned regularly, and reargued orally in the court, and the opinion of the majority of the court then filed, reversing the judgment of the superior court. A petition was then filed by counsel for respondent, praying for an important modification of the opinion filed, and subsequently an opinion denying such modification. There can be no doubt of the jurisdiction of this court over the cause and the power to make any modification of its opinion, until the final judgment was rendered, and until the remittitur issued. Under the law the courts in this State are always in session, in legal contemplation. 'An action is "pending" * * * until the judgment is fully certified.' Anderson, Law Dict. verb. Pend. Ulshafer v. Stewart, 71 Pa., 170; Holland v. Fox, 3 El. & Bl., 977; Wegman v. Childs, 41 N. Y., 159; * * *"

In the elaborate notes appended to the case, *supra*, will be found the following statements of the rule in question, supported by abundant authority:

"Where a decree has not been enrolled, or where it is subject to modification upon motion, or where the court might grant a rehearing, or where an appeal might be taken, or where the costs had not been taxed, or where no execution had issued—it not being in con-

dition to issue execution—the case could not be said to have reached that stage where it could be said it was not pending in that court. Re Chadwick, 109 Mich., 588; Fishback v. State, 131 Ind., 304; Bloom v. People, 23 Col., 416.

"A petition on which judgment has been finally pronounced, but on which the order has not been drawn up, is a 'pending proceeding.' Exparte Turner, 3 Mont., 523."

In Melton v. Commonwealth, *supra*, Melton, a physician, in contemplation of a suit to be instituted by a party to recover damages for personal injuries sustained by the alleged negligence of another, pretended to treat the party in a professional way for the purpose of manufacturing evidence that would sustain the action that was soon thereafter brought, when he knew such party was not injured. We held that, although such conduct upon his part was a common law misdemeanor, because of its obstructing justice, for which he might have been proceeded against by warrant or indictment, he was not guilty of contempt, because the action in which he attempted to manufacture evidence was not an action pending in court. After defining the distinction between acts which constitute the common law misdemeanor of obstructing justice and those which constitute criminal contempt, it is in the opinion said:

"In thus speaking we do not undervalue the importance of protecting courts or of keeping pure the administration of the law; nor do we think what we have said limits in any manner the power courts have always possessed to punish as for contempt persons who were guilty of contempt as it has been always defined. When a court has full power and authority to protect its dignity, enforce its processes, discipline its officers and punish those who would impede or bring into disrepute the administration of justice in a pending case, it has all the authority that is needed to be exercised through contempt proceedings, and other offenses should be left to be disposed of in the ordinary way. If there had been a suit pending in the Jefferson Circuit Court and Melton had attempted to manufacture evidence in this suit, or had endeavored to persuade a witness to give false evidence or conceal the truth, *or had in any manner or form interfered with the due administration of justice in the court in which the case was pending, we would*

*have no doubt of the right of the court in which the case was pending to proceed against him in the summary manner adopted by Judge Field in this case."*

For one to commit, as was done by the appellant in this case, an assault and battery upon the witness as a punishment for giving testimony against him in an action or criminal prosecution then pending, though in part disposed of, or as a means to intimidate him and influence his testimony expected to be given in the future trial of an action or criminal prosecution then pending, is a criminal contempt, because such conduct is as much an interference with the authority and dignity of the court, and an obstruction of justice, as would be the intimidation or bribery of a witness, or any contempt committed in the presence of the court. The evidence clearly proves appellant's guilt of such a contempt, and this being true it was within the power and jurisdiction of the court to proceed against him by rule and summarily try him as was done in this case. It is equally manifest that the power of the court was inadequate to the infliction of such punishment as the contempt of appellant deserved. Therefore, it was proper to submit the matter to the determination of a jury. As said in French v. Commonwealth, 30 R., 98:

"We have in this State no statute defining contempt. There is a statute limiting the power of the court as to the infliction of punishment for contempt, but if, in the opinion of the court, the contempt is one demanding greater punishment than lies in its power to inflict, it may have a jury to hear the truth of the matter, and leave it to them to inflict such punishment as they may deem commensurate with the offense. As in any other case of trial by jury, their verdict will not be disturbed unless flagrantly against the evidence or the result of passion or prejudice. There is nothing here to indicate passion or prejudice on the part of the jury."

The further contention of appellant that the court erred in instructing the jury is without merit. Instruction No. 1 appears to be the only one objected to. That instruction, in substance, told the jury that in order to find the appellant guilty of the contempt charged they must believe from the evidence beyond a reasonable doubt that the assault and battery committed upon Cook was done to intimidate him as a witness in the case then pending, or to punish him for testifying in the case

theretofore recently tried. It is insisted for appellant· that the alleged error in this instruction was in its advising the jury that they might find appellant guilty if his motive for committing the assault and battery was to punish Cook for testifying in the case just tried. Obviously this contention rests upon the ground that if the assault was committed from the motive last mentioned it would not constitute a contempt in the meaning of the law. This we have already answered by stating in the opinion that as the case tried must be regarded as pending in court at the time of the commission of the assault, the assault, if committed by way of punishment for the testimony given by Cook therein, was as. much a contempt as if it had been committed for the purpose of intimidating Cook as a witness in a future trial to be had of the other indictment, which had been continued to the succeeding term of the court.

It is also insisted for appellant that he did not actually know that Cook had been subpoenaed as a witness in the continued case. In our opinion it is not material whether appellant had knowledge of a subpoena having been served on Cook in that case. It is manifest that he knew Cook was a prospective witness in the continued case, as his name appears upon the indictment as a witness for the Commonwealth, and appellant, being in court on that indictment, must be presumed to have knowledge of what it contained, not only as to the offense charged, but as to the witnesses for the Commonwealth whose names appear upon the back thereof. Moreover, as Cook was the most important witness for the Commonwealth in the other two cases and had testified in each, which was, of course, known to the appellant, who was himself present at each of the trials, it is reasonably certain that he knew of the importance of his testimony to the Commonwealth in the continued case.

Appellant's final contention, that the punishment inflicted by the verdict is excessive, cannot be sustained. In view of the nature of the contempt committed by appellant and the aggravating circumstances attending its commission, no reason is apparent for regarding the punishment inflicted by the jury greater than his conduct deserved. In French v. Commonwealth, *supra,* the judgment inflicting a fine of $5.000.00 upon the appellant was affirmed by this court. We find in this case nothing to

indicate that the jury in reaching a verdict were influenced by passion or prejudice, and, in the absence of such a showing, no reason is apparent for disturbing the verdict. Every judge at all familiar with the conduct of criminal prosecutions in this State has seen that one of the chief difficulties in the way of the punishment of crime and the enforcement of law, lies in the inability of the courts and prosecuting officers to procure the testimony of witnesses having knowledge of the facts upon which the conviction of violators of the law may be secured. This in most instances is due to the intimidation or bribery of witnesses. It is, therefore, the duty of the court to protect witnesses from evilly disposed persons who resort to such means of suppressing evidence; and this cannot better be done than by bringing them to speedy trial and certain punishment; and where, as in a case like this, the evidence unerringly establishes the guilt of the contemner and there is nothing to be urged in mitigation of the contempt, it would be a miscarriage of justice to set aside the verdict unless for error so prejudicial in character as that it prevented the accused from receiving a fair and impartial trial.

The judgment is affirmed.