## Hendrickson v. Commonwealth.

(Decided June 18, 1915.)

### Appeal from Bell Circuit Court.

1. **Criminal Law—Homicide—Evidence—Sufficiency.**—On a trial for homicide, evidence considered and held sufficient to sustain a conviction.

2. Criminal Law—New ·Trial—Disqualification of Juror.—Evidence held to sustain :a finding· that two jurors were not disqualified for service on account of having expressed opinions hostile to the accused, and the refusal of the trial court to grant a new trial on that ground..

G. J. JARVIS for appellant.

JAMES GARNETT, Attorney General, and R. T. CALDWELL, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY WILLIAM ROGERS CLAY, COMMISSIONER—Affirming.

Press Hendrickson was convicted of the murder of Thomas Miller and given a life sentence in the penitentiary. He appeals.

A reversal is asked on the following grounds: (1) The verdict is not sustained by the evidence; (2) Two of the jurors were disqualified by reason of having previously formed and expressed an opinion hostile to the defendant.

1. The homicide occurred about ten o'clock on the morning of December 24th, 1913. About nine o'clock on that day, Thomas Miller and his two sons, both under the age of twenty-one, started to the village of Four Mile to purchase some Christmas gifts. On leaving home, Thomas Miller took with him a 44-calibre pistol. One of his sons, who helped to carry the pistol en route, says that it was unloaded. On reaching the village of Four Mile, Miller went to the store of George White, in the vicinity of the depot, and endeavored to purchase some cartridges, but was unable to obtain any. Mrs. White, who was present and observed the pistol, states that it was unloaded. About three-quarters of an hour later, Miller and his two sons went with White to the railroad depot for the purpose of assisting the latter in carrying some goods over to his store. While at the depot White was attacked and struck by George Hendrickson, a first cousin of the defendant. The cause for the attack does not satisfactorily appear. White endeavored to get away from George Hendrickson. Jim Hendrickson, George's father, approached and attempted to get his son to release White. At that time Miller started in their direction. As to what occurred thereafter the evidence is conflicting. One of the Miller boys states that, fearing trouble should his father go to White's assistance, he took hold of his father's arm

and induced him to withdraw. As they started around the corner of the depot and away from the combatants, the defendant, Press Hendrickson, stepped up to his father and presented a pistol at his head or neck. Miller made no offer of resistance, but, as he walked on, the defendant deliberately shot him in the back. As he fell, both the defendant and John Hendrickson continued to fire at him. White says that Press Hendrickson fired the first shot, although Miller had gotten too far around the corner of the station for him to see the effect of the shot. Both the Miller boys swear that their father had never drawn his pistol nor made any demonstration to do so, and that he was walking away from defendant when shot. The coroner, after describing the wounds on Miller's body, first stated that the shot through the body entered from the front. Later, he stated that he did not know whether the shot entered from the front or rear. The coat and shirt which Miller wore were introduced as exhibits and showed that the holes in them were larger in front than behind. Certain witnesses stated that the hole of exit is usually larger than that of entrance.

The defendant testified that he was standing on the railroad about thirty feet away when he observed some parties scuffling at the corner of the depot. Just then he observed a man take a box off of his shoulder and pull a pistol and start towards the place where the boys were scuffling. Defendant started toward the combatants and met the party. At that time the party had his pistol pointed at George Hendrickson and old man Jim. He told the party to take his pistol down; that the parties engaged in the scuffle were his uncle and cousin. Whereupon Miller wheeled and said that he would just as soon shoot defendant as anybody and threw his pistol around and fired. Miller then backed around the corner of the house and fired another shot. Miller fired four shots altogether. Defendant fired after the second shot was fired. Thereupon John Hendrickson fired and shot at the man who was killed. Never at any time did the man turn his back to him. After the man fell, his brother examined his pistol and broke it open. There were two shots in the pistol and four hulls. He further testified that White left before any shots were fired. Defendant says that he had three drinks that morning but was not drunk. Some three or four other witnesses, who were relatives or connections of defendant, corroborate him

in his statement that he never fired at Miller until Miller had drawn his pistol and fired at him. It was shown, however, that one or two of these witnesses were not in a position to see what transpired. It will be seen from the foregoing brief statement of the evidence that if the witnesses for the defendant are to be believed, he acted in self-defense. On the other hand, if the witnesses for the Commonwealth are to be believed, the murder was without justification or excuse and fully justifies the punishment fixed by the jury. Where, as in this instance, the degree of the defendant's guilt depends on whether or not the witnesses for the Commonwealth or the witnesses for the defendant are to be believed, and we are unable to say that the verdict is flagrantly against the evidence, it is our rule not to interfere with the finding of the jury. Chaney v. Commonwealth, 149 Ky., 464; Black v. Commonwealth, 154 Ky., 144; Slaughter v. Commonwealth, 152 Ky., 128.

2. But it is insisted that a new trial should be granted, because jurors Pike and Price, prior to the trial, expressed opinions hostile to the defendant. To sustain this contention the defendant filed his own affidavit and the affidavits of Joe Bain, Nath Laws and Walter Laws in regard to the juror Price, and the affidavit of W. M. Brackett with reference to the juror Pike. The Commonwealth thereupon filed the counter-affidavits of the two jurors and ten other persons, including six members of the jury. In some of these affidavits the reputation of Nathan Laws, Walter Laws and W. M. Brackett was impeached. The other members of the jury swore that, in the consideration of the case, Pike and Price not only failed to exhibit any hostility towards the defendant, but resisted the infliction of the death penalty. The affidavits of Pike and Price exonerate them from any hostility towards the accused. It further appears that on the hearing of the motion for a new trial, certain witnesses, both for the defendant and Commonwealth, were orally examined in court.

In disposing of questions like this, it is our rule to rely, to a large extent, on the sound discretion of the trial court. The reason for this rule is that some weight must be given to the court's knowledge of the conduct of the juror during the trial and its acquaintance with the character of the juror and that of the defendant's witnesses, by whose affidavits it is sought to show the juror's disqualification for service. Hence, where the

court, as in this instance, has thoroughly inquired into the matter and has concluded to accept the affidavits of the witnesses for the Commonwealth rather than those of the witnesses for the defendant, and, therefore, overruled the motion for a new trial, it is our rule not to interfere with his discretion, unless the evidence of the juror's disqualification is so clear and convincing that it is plain that the court reached an erroneous conclusion. If the rule were otherwise and new trials could readily be secured after the verdict, on the ground that jurors were disqualified from service by reason of opinions previously expressed, the temptation to procure the needed evidence and the ease with which it could be procured, would result in many new trials being granted when the verdict should not be disturbed. A careful consideration of the evidence on the question involved convinces us that the trial court did not err in refusing a new trial on the ground relied on. Brannon v. Commonwealth, 162 Ky., 353; Mansfield v. Commonwealth, 163 Ky., 488.

Finding no error in the record prejudicial to the substantial rights of the defendant, the judgment is affirmed.