## Springs v. Commonwealth.

(Decided March 13, 1923.)

### Appeal from Lyon Circuit Court.

1. Criminal Law—Competency of Evidence Not Objected to or Excepted to Cannot be Reviewed.—The admission of evidence as to trailing by a bloodhound was not reversible error, even if the evidence was incompetent, where no objection was made at the trial and no exception saved to its admission.

2. Arson—Evidence Held Insufficient to Sustain a Conviction.—In a prosecution for wrongfully burning a barn, circumstantial evidence as to trailing by a bloodhound to defendant's premises, where a tenant who confessed he had visited the barn also lived, and as to tracks in two fields across which the bloodhound went but which were not adjacent to either the barn or defendant's premises and which were not connected with defendant except by testimony of

witnesses that one set of tracks might have been made by him, held insufficient to sustain a conviction.

3. Arson—Evidence Held Incompetent to Show Motive.—In a prosecution for wrongfully burning a barn, evidence that a month or more before the barn was burned accused, while talking about a raid previously made in the neighborhood, stated that if the party who raided the neighbor were to treat him that way he would get even with them, was incompetent to show motive, even though thereafter the premises of defendant were raided and prosecuting witness was delegated by the officer to guard a still taken therefrom; it appearing that defendant thanked prosecuting witness for advice given a member of his family on that occasion and remained on friendly terms with him.

4. Criminal Law—Evidence as to Nervousness of Accused When Bloodhound was Brought Held Incompetent.—In a prosecution for wrongfully burning a barn, testimony by a witness that, when the bloodhound was brought to town to track the guilty persons, accused displayed nervousness, was incompetent; it appearing that accused at the time had accompanied his wife to town to have some dental work done and his nervousness might have been attributed to that.

5. Criminal Law—Evidence of Conduct of Accused When Arrested Held Incompetent.—Evidence that accused when arrested was so nervous that he exclaimed, "Ain't this hell?" is incompetent to show guilt, since an arrest for crime would naturally make a person nervous, especially if he knew himself to be innocent.

6. Criminal Law—Circumstantial Evidence Insufficient Unless it Excludes Every Reasonable Hypothesis of Innocence.—A conviction may be had upon circumstantial evidence alone, when it is of such character as to exclude every reasonable hypothesis of innocence.

CROSSLAND & CROSSLAND for appellant.

CHAS. I. DAWSON, Attorney General, and THOS. B. McGREGOR, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY CHIEF JUSTICE SAMPSON— Reversing.

The appellant was tried in the court below under an indictment charging him with the crime of wilfully and feloniously burning a barn, the property of J. L. Robertson, and by verdict of the jury found guilty and his punishment fixed at confinement for two years in the penitentiary. He complains of the judgment entered on the verdict and of· the refusal of the circuit court to grant him a new. trial, and has appealed.

The indictment charged that he acted with one Fred Moneymaker, a tenant of his, in burning the barn, and

it· appears from the· record that Moneymaker was inherited, tried and convicted of the crime several months prior to· the indictment and trial of the appellant, against· whom the grand jury failed at two terms of the court to return an indictment. The evidence against the appellant was purely circumstantial, the whole being furnished by the. trailing of a so-called bloodhound, the discovery of unidentified foot tracks, testimony as to the appellant's conduct upon the arrival at Kuttawa of the hound which did the trailing, and of a conversation he had with the owner of the barn several months before the burning of the barn, intended to show a motive for the crime.

Time will not be consumed in discussing all of the numerous grounds urged for a new trial and now relied on for a reversal of the judgment. As in our opinion the judgment must be reversed on at least two of the grounds urged therefor, we will in the main confine ourselves to them. They are error of the trial court: (1) In admitting certain incompetent evidence objected ·to by the appellant; (2) in refusing an instruction directing the return of a verdict of not guilty by the jury as requested by appellant at the conclusion of the Commonwealth's evidence and again at the conclusion of all the evidence.

It appears from the bill of evidence found in the record that Robertson's barn was burned about 3 o'clock a. m., May 28, 1921. The fire was evidently of incendiary origin. By 10 o'clock a. m. one Bob Pigg, of Water Valley, Kentucky, in obedience to a telegram from Robertson, arrived at the latter's home with a ten year old dog, claimed to be a bloodhound, which with some hissing from Pigg was put to smelling the ground at and around the burned barn. After barking at the corner of the barn, the dog began trailing in Robertson's pasture down a fence until he arrived at a field which had been plowed and dragged or rolled with a log. In this field were found the tracks of two men; one set of the tracks appearing to have been made by number 9½ or 10 shoes and the other by number 7 or 8 shoes. These tracks were followed some distance to a point where they turned and came back to a ditch near a fence; there the dog stopped and was led by Pigg 75 yards away to a gate or steps by which both passed through or over the fence into a public road greatly traveled and then containing numerous shoe tracks. Upon reaching the road both Pigg and the dog followed it to a gate between which and the.

ditch where the dog had previously stopped, was a small plowed field which was also crossed by tracks similar to those seen in the plowed and logged field, but the tracks disappeared ten feet from the gate where the ground seemed too hard for shoes to make an impression; and though Pigg and the dog went from that point by the public road directly to the appellant's home no other like tracks were found on the way or after their arrival there.

Upon reaching the appellant's home, which is a quarter of a mile from Robertson's home and where the barn had been situated, the dog entered the premises and going first by the house and garage trailed on to the barn where Moneymaker, the appellant's tenant and the person first indicted and convicted of the barn burning, was found. The tracks did not lead to nor connect with the barn on the one side, nor the house of the appellant on the other, but were confined to two fields about midway between them. None of the tracks referred to were measured, nor were the shoes of the appellant or Moneymaker measured or attempted to be fitted to the tracks. Several witnesses expressed the opinion, however, that the shoes worn by the appellant were of such size and shape as would or might have made the larger tracks, and those worn by Moneymaker such as would or might have made the smaller tracks.

Besides the evidence respecting these tracks and the trailing done by the dog, the Commonwealth was permitted, over the appellant's objection, to prove by Robertson a conversation he claimed to have had with the appellant more than a month before the burning of the barn, in which the latter made, as he testified, what amounted to a conditional threat to injure him in his person or property; and also to prove that the appellant appeared to become nervous or embarrassed when the dog of Pigg was taken from the train on the way to Robertson's home, and that such was likewise his demeanor when later placed under arrest for the burning of the barn.

It is insisted for the appellant that all evidence as to the trailing done by the dog was incompetent and should have been excluded; it being contended that the proof introduced respecting the pedigree, training and experience of the animal failed to show him qualified under the rules announced by this court to perform the service it was attempted to have him render. If the evidence in

question had been objected to by the appellant on the trial in the court below and an exception taken to its admission, we would under authority of the following cases, hold it incompetent: Blair v. Comlth., 181 Ky. 218; Sprouse v. Comlth., 132 Ky. 269; Denham v. Comlth., 119 Ky. 508; Pedigo v. Comlth., 103 Ky. 41. But as the bill of evidence wholly fails to show that the appellant objected to any of the evidence introduced as to the trailing performed by the dog, or as to his want of qualification for its performance, we are not now at liberty to declare its admission by the trial court reversible error.

Regarding, however, as admitted the competency of the dog to do the trailing he performed, the evidence furnished by it cannot of itself be accepted as conclusive of the appellant's guilt. On the contrary, as held by the authorities, *supra,* and all others on the subject to which our attention has been called, evidence as to trailing by bloodhounds of one charged with crime, may be permitted to go to the jury for what it is worth, as one of the circumstances which may tend to connect the defendant with the crime. The evidence in this case of the trailing done by this dog we regard of little, if any, value as tending to show the appellant's guilt, for as Moneymaker, who was first convicted of the burning of Robertson's barn, in testifying on the appellant's trial admitted that he went to the barn alone shortly after 2 o'clock a. m. the morning it was burned for the purpose of taking some corn which he did in fact take and carry away, and that while in the barn he struck a match to see his way, which might have started the fire, it would seem fairly evident that he alone was the party trailed by the dog on the morning following the burning of the barn. His uncontradicted testimony if accepted as true would seem to explain the cause of the fire and exonerate the appellant from any participation in the burning of the barn, it being his positive statement that he was unaccompanied by the appellant in going to the barn for the corn. Moneymaker's confession of guilt may also be said to find some support in the conduct of the dog whose trailing led him to pass, after a momentary pause, the dwelling house and garage of the appellant and go on to the barn where Moneymaker was found, which ended the animal's trailing.

As the tracks discovered on the morning following the burning of the barn went no nearer the location of

the burned barn than the plowed and logged field, and those beyond the latter field went no nearer the appellant's home than the adjoining plowed field, and there was evidence conducing to prove that shoes of the make and the size worn by the latter were constantly kept in stock and almost daily sold by a merchant in the nearby town of Kuttawa, no significance can be attached to the fact that the larger of the tracks found might have been made by shoes of the size and make worn by the appellant.

We think the trial court erred to the prejudice of the appellant's substantial rights in admitting evidence of the conversation containing the conditional threat alleged to have been made against Robertson by the appellant. The conversation occurred a month or more before the burning of the barn and while Robertson and appellant were riding in the latter's automobile from Kuttawa to or near their respective homes. They were, according to the testimony of Robertson, talking about a raid that had previously been made in the neighborhood by prohibition officers upon the premises of one Hunter, in regard to which appellant, as stated by Robertson, expressed his condemnation of the raiders and in substance said it was dangerous to be raiding for stills and moonshine whiskey, and if the parties who had raided Hunter were to treat him that way he would resent it and not submit to it, and would get even with them; and that if he died others would get even with them. It appears that about a month before Robertson's barn was burned a raid for prohibition enforcement was made by the county sheriff and posse on the appellant's premises. Robertson happened to be passing by appellant's home at the time and was summoned or deputized by the sheriff to stand guard over a captured still while he and his posse continued their search of the premises. The object in proving these facts and the previous conversation was to show that the duty performed by Robertson in obedience to the command of the sheriff caused him to incur the ill-will of the appellant and gave the latter a motive for burning his (Robertson's) barn and thereby execute the alleged threat made in the previous conversation as to what he would do if treated as Hunt was. We think the evidence of the previous conversation between Robertson and appellant and what occurred during the raiding of appellant's premises was all incompetent and highly

prejudicial. It was all too remote and indefinite to show a motive on the part of appellant for the burning of the barn. Moreover, whatever was said by the appellant akin to a threat in the conversation was not directed against Robertson or any particular individual and was based upon a condition that did not then exist and might never arise, in fact did not arise in so far as Robertson was concerned, for appellant knew how Robertson became guard over the still and later thanked him for some kindly and valuable advice he gave a member of his family on that occasion. Indeed Robertson himself testified that his relations with appellant continued friendly and intimate until after the burning of the barn; that they exchanged visits and frequently rode together and that he had never heard of any complaint from appellant of the part he (Robertson) took in guarding the still for the sheriff. Manifestly this evidence cannot be tortured into the semblance of a showing of motive for the commission of the crime charged.

The evidence regarding the conduct of appellant when he witnessed the arrival at Kuttawa of the dog, and at the time of his arrest was also incompetent. It is difficult to understand how the witness who testified to the appellant's demeanor on the occasions referred to could have told what caused his nervousness at either time. The evidence shows he had carried his wife to Kuttawa to have some work done on her teeth, with which she was suffering, and it is as reasonable to suppose that such nervousness as he then exhibited was due to her condition as some other cause; at any rate the cause for it is purely speculative.

It was testified that his nervousness when arrested was so extreme that he exclaimed, "Ain't this hell" It would be hard to imagine anything more calculated to make one nervous than to arrest him for a grave crime, particularly if he knew himself to be innocent; and what would be more natural than that he should make some remark expressive of his surprise and resentment because thereof. Obviously, such evidence establishes its own incompetency and should have caused its exclusion.

Viewing the evidence as a whole it was insufficient to require the submission of the case to the jury. The conviction of one charged with crime may be had upon circumstantial evidence alone when it is of such character as to exclude every reasonable hypothesis of his innocence. Hatfield Coal Co. v. Comth., 193 Ky. 229; Sprouse

v. Comlth., 132 Ky. 269; Rucker v. Comlth., 171 Ky. 276; Meredith v. Comlth., 192 Ky. 377; Underhill on Crim. Evi., sec. 6. But there are too many missing links in this evidence. It is indeed consistent with his innocence and the trial court should have instructed the jury to find him not guilty. For the reasons indicated the judgment is reversed for a new trial; and if on another trial the evidence is the same, the court should peremptorily direct a verdict of acquittal. The whole court sitting.