## Wilhite v. Commonwealth.

(Decided June 3, 1924.)

### Appeal from Daviess Circuit Court.

1. Criminal Law—Attempt to Intimidate Witness Admissible.—A threat to kill one if he told what he knew and an attempt to carry out such threat after witness testified before grand jury were both admissible even though it showed defendant guilty of another offense.

2. Criminal Law—Statement of Accused as to Previous Offenses Admissible to Show Motive.—In prosecution for burning insured house, testimony as to statement of accused after having set house afire that he had "pulled these stunts before" held admissible to show motive.

3. Criminal Law—Court should have Limited Effect of Testimony as to Other Offense.—Court on admitting evidence of statement of accused that he had "pulled these stunts before" on trial for burning insured house should have admonished jury that statement could not be considered as conducing to prove guilt of crime charged, but only in determining motive.

4. Arson—Building Burned Must be Insured in Company Regularly Engaged in Carrying on Fire Insurance Business.—It is essential to conviction for burning insured dwelling house, that policy be issued by insurance company regularly engaged in carrying on business of fire insurance in state.

R. M. STUART for appellant.

FRANK E. DAUGHERTY, Attorney General, and CHARLES F. CREAL, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY JUDGE CLAY—Reversing.

Appellant was convicted of the offense of burning a dwelling house upon which there was insurance, and his punishment fixed at confinement in the state reformatory for a period of three years.

The evidence may be summarized as follows: On November 7, 1923, Harry Guenther, an insurance agent at Owensboro, issued a policy insuring the property in the sum of $2,000.00. The property was burned about one o'clock a. m. on November 12, 1923, and insurance to the amount of $1,500.00 was paid. According to Gilbert Hazelwood, appellant came to his house on the Sunday morning preceding the fire, and stated that he and his wife had separated, and he wanted to board with witness. Appellant returned after dark that evening and had some things in a blanket which he said he would give to Mrs.

Hazelwood. After supper Hazelwood and appellant went to a Holy Roller meeting and remained there for some time. Later on they wandered about from one place to another. Between twelve and one o'clock they drove in appellant's car up Fourth street, when the lights went out and appellant got out to fix them. Appellant had a five gallon coal oil can in the car and started towards the house, telling witness to wait until he returned. On his return he stated that he had set fire to the house to get the insurance. He also said "he had pulled those stunts before." They then returned to Hazelwood's home. At that time appellant was pretty drunk and hardly able to run the car, and said, as he heard the fire department going down Main street, "The damn thing will burn down before they get there." Neither appellant nor witness went back to the fire that night. Afterwards appellant told the witness that if witness told, he would kill witness and tie a rock around him and throw him into the river and drown him, and if witness wouldn't tell he would give him $50.00. Appellant also told witness' wife that he would buy her a nice coat if she wouldn't tell. Later on appellant told witness that if witness ever told it, he would not live, and if he didn't get him some of his brothers would. Afterwards witness went before the grand jury, and a few days later appellant assaulted him and hit him in the head with a rock. Mrs. Hazelwood also testified that appellant and her husband returned to her home between twelve and one o'clock on Sunday night. Just as the alarm sounded they came in and went to bed. Appellant was drunk and said, "There goes the fire wagon down Main street, but it will burn down before they get down there." Appellant told her husband not to say anything about the fire he would give her husband $50.00. Appellant also told her not to say anything about it and he would give her a nice coat suit. The chief of the fire department testified that the alarm was turned in about one o'clock on Monday morning, November 12th. He accompanied the fire department to the house and ascertained that the smoke was black and that the house had been oiled.

Appellant denied that he was with Hazelwood after ten or ten-thirty o'clock on the night of the fire, and testified that none of the testimony of Hazelwood and his wife as to what occurred after that time was true. On the contrary, he claims that he left town about 11:30 and went to the home of Sanford Aubrey, where he stayed all

night. In this he is corroborated by other witnesses. He also testified that there was a gallon can half filled with coal oil on the premises. He also introduced several witnesses who impeached the veracity of Hazelwood, and some of his own witnesses were impeached by the Commonwealth. Though appellant admitted that he was the purchaser of the property, he claimed that he had sold it to his brother, and introduced in evidence an undated and unacknowledged deed from the vendors, who claimed that they did not know it was necessary to acknowledge the deed.

The admission of Hazelwood's statement that appellant assaulted him with a brick is the first error complained of. Any conduct of the accused inconsistent with his innocence is admissible. Hence any attempt, whether by persuasion, bribery or threats, to induce a witness not to appear at the trial, or not to tell the truth, is in the same category as the flight of the accused and should be admitted. Collins v. Commonwealth, 12 Bush 27; Sanderson v. Commonwealth, 11 Ky. L. Rep. 341, 12 S. W. 136; Adams v. People, 9 Hun. (N. Y.) 89; Roberson's Kentucky Criminal Law and Procedure, vol. 2, section 965. Here, the accused not only threatened the witness before he testified, but assaulted the witness after he gave his testimony before the grand jury. In other words, he executed his plan of intimidation by carrying out his threats, and evidence of the assault was admissible, even though, as in the case of bribery, it showed that appellant was guilty of another offense.

Another contention is that the court erred in permitting Hazelwood to testify that appellant said that he had "pulled these stunts before." The contention is based on the rule that evidence of other distinct offenses is not admissible. It must not be overlooked, however, that one of the exceptions to the general rule is that such evidence is admissible to show motive. Burns v. Commonwealth, 198 Ky. 319, 248 S. W. 848. The theory of the Commonwealth was that the motive for the perpetration of the crime was the collection of the insurance. In connection with the statement that he had burned the house to get the insurance, appellant made the remark referred to, and there can be no doubt that it served to illustrate appellant's motive in the perpetration of the crime charged. However, on overruling appellant's objection to the evidence, the court should have admonished the jury that the statement could not be considered by them

as conducing to prove appellant's guilt of the crime charged, but that it might be considered by them in connection with all the other evidence in the case only for the purpose of determining whether or not appellant had a motive for the commission of the offense. Richardson v. Commonwealth, 166 Ky. 570, 179 S. W. 458.

The statute under which appellant was indicted and tried makes it an offense to burn a dwelling house or other building or house on which there is any insurance, and plainly contemplates that there shall be legal insurance on the property. It is therefore essential to a conviction that the policy be issued by an insurance company regularly engaged in carrying on the business of fire insurance in this state. Though the indictment was sufficient in this respect, Guenther, who was placed on the stand to show that the insurance was in force at the time of the fire, merely stated that he wrote the policy on the property, that the property was burned and that the policy was paid. He never mentioned the name of the company that he represented, or the name of the company issuing the policy, nor did he testify to any facts showing that the policy was issued by an insurance company, much less by an insurance company regularly engaged in carrying on the business of fire insurance in this state. Without stopping to inquire whether this evidence was sufficient to sustain a conviction, we deem it necessary to add that the proper method of proof is to show that the property was covered by a policy issued by an insurance company regularly engaged in carrying on the business of fire insurance in this state.

Judgment reversed and cause remanded for a new trial consistent with this opinion.