# Halvin C. Wolf and Raymond Wolf v. Commonwealth.

(Decided March 26, 1926.)

## Appeal from Jefferson Circuit Court (Criminal Division).

1. Criminal Law.—Grounds for new trial, not discussed in brief, will be treated as waived.

2. Arson.—In prosecution for burning a storehouse, evidence connecting accused with burning, which was of undoubted incendiary origin, held for jury.

3. Criminal Law.—In prosecution for burning a storehouse, evidence of fire insurance on property held properly admitted without being limited to question of motive.

4. Arson.—In prosecution for burning a storehouse, evidence held sufficient to sustain conviction.

5. Arson.—Conviction of burning a storehouse may be had upon circumstantial evidence alone.

6. Criminal Law—Instruction on Circumstantial Evidence Should Not be Given, When Evidence is Partly or Altogether Circumstantial.—Instruction on circumstantial evidence should not be given when evidence is partly or altogether circumstantial, but jury should be allowed to give such weight to the evidence as they consider it entitled to.

7. Criminal Law—It is Common Observation that People often Form Opinions of Others Without Knowing Them Personally, and in Communicating such Opinions May Say, "If You Knew Him Like I Do," Without Meaning to Imply Personal Acquaintance.—It is a matter of common observation that people often form opinions of others without knowing them personally, and in communicating such opinons may say, "If you knew him like I do," without meaning thereby to convey impression that they know such individual personally.

8. Criminal Law—Heat Displayed by Juror in Jury Room Argument Held Not Shown Based on Prejudice or Bias, other than Founded on Evidence Heard in Case.—In seeking to show misconduct of juror, heat displayed in jury room argument held not shown based on bias or prejudice, other than founded on evidence in case.

9. Criminal Law.—Misconduct of one of jurors cannot be shown by affidavits of fellow jurors.

10. Criminal Law.—In support of verdict sought to be impeached on ground of misconduct of juror, affidavits of fellow jurors may be considered.

11. Criminal Law—Refusal of New Trial on Ground of Juror's Alleged Misconduct in Concealing Acquaintance with Accused and Family on His voir dire Held Not Abuse of Discretion.—Refusal of new trial, sought on alleged bias, prejudice, or misconduct of juror in concealing his acquaintance with accused and his family on voir

dire, sought to be proved on affidavit of convicted felon, which was controverted, held not abuse of discretion.

12. Criminal Law.—Alleged misconduct of Commonwealth's attorney in argument to jury cannot be considered, where not embodied in bill of exceptions.

13. Criminal Law—Alleged Misconduct of Commonwealth's Attorney Held held not Reviewable, Where no Ruling was Obtained on Motion to Exclude Evidence Objected to.—Where objection to cross-examination by Commonwealth's attorney was sustainde, but accused obtained no ruling on its motion to exclude certain evidence, there being nothing in record to show what action was taken, alleged misconduct held not reviewable.

14. Criminal Law.—Adverse ruling on objection to evidence is not reviewable, where exception is not preserved.

J. L. RICHARDSON and W. G. DEARING for appellants.

FRANK E. DAUGHERTY, Attorney General, and G. D. LITSEY, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY DRURY, COMMISSIONER— Affirming.

The defendants have appealed from a judgment imposing upon each of them one year's imprisonment in the penitentiary for burning a storehouse. The indictment is much like the indictment in the case of Dennison v. Com., 208 Ky. 366, 270 S. W. 752. The defendants filed fifteen grounds for a new trial. Many of these are not discussed in their brief, and we shall treat them as waived. McCorkle v. Chapman, 181 Ky. 607, 205 S. W. 682.

The evidence showed that the defendants conducted a candy factory, and were engaged in the wholesale and retail candy business in a building belonging to their sister, Florence Wolf, situated at 418 E. Market street, Louisville, Ky. Halvin C. Wolf claims that he left the store about 7:45 p. m. on December 11, 1924. Raymond Wolf claims he locked the store and left about 9:00 p. m. Some one discovered a fire in this store about 2:45 next morning. The fire department quickly responded to the alarm, and the fire was soon extinguished. The building was found closed, and was broken open by the firemen. On the first floor a packing box was found, in the bottom of which were two candles standing on sheets of waxed or paraffin treated paper, to which they were held by tacks stuck through the paper and into the bases of the candles. Stuffed around the edges and in the corners of

this packing box was a lot of crumpled paper. A similar fire trap was found on the third floor, near the sky light, and another was found in a barrel in the back room on the first floor. All of these candles were burning. No candles were found on the second floor, but that is perhaps accounted for by the fire being on that floor, by which, any candles set there were in all probability destroyed. The captain of one of the fire companies testified he could smell fumes of coal oil coming from the basement. Another fireman testified he could smell fumes of coal oil on the second floor. The defendants claim this odor came from slab oil, a petroleum product used in the manufacture of candy.

That this fire was of incendiary origin seems to be unquestionable. It is also apparent that these fire traps were set by some one who had access to the inside of the building. The evidence shows that no one had keys to the building, except Raymond Wolf, and there was no evidence of the building's having been broken into. The defendants testify that after leaving the store the evening before, they went home, and remained there all night. They are supported in this by the evidence of two friends who spent an hour or so with them listening to their radio, and by members of their family, who give a plausible account for being awake, and who testify they did not leave. Against this there is the evidence of a street car motorman and a conductor, that these defendants got on their car at Broadway and Shelby streets at 2:30 that morning. The conductor did not know them, but the motorman did, and talked with them, and he says that in response to his inquiry what they were doing out at that time of night, they told him they had been to the country. There was evidence that candles such as these would burn about forty-five minutes. If these fire traps were set by these young men at 2:00 a. m., that would allow them thirty minutes to walk from 418 E. Market street to Shelby and Broadway, where they caught the car, and the fire discovered at 2:45 was just about on schedule time. The jury evidently reasoned thus, and this was a question for the jury.

Defendants cite the case of Wilhite v. Com., 203 Ky. 543, 262 S. W. 949, in support of their contention that the court erred after admitting, over the objection of the defendants, evidence that there was fire insurance on this property, in failing to admonish the jury that it was only competent to show motive, if it did, and that it could

be admitted for no other purpose. The defendants are in error in their contention. The Wilhite case announces no such doctrine. On the contrary, the court said:

> "Without stopping to inquire whether this evidence was sufficient to sustain a conviction, we deem it necessary to add that the proper method of proof is to show that the property was covered by a policy issued by an insurance company regularly engaged in carrying on the business of fire insurance in this state."

If the Commonwealth had failed to prove that there was a lien, or fire insurance on this property, it would have failed to make out a case.

See Dennison v. Com., 208 Ky. 366, 270 S. W. 752. While the existence of the insurance may show some motive, the defendants had for the burning of this property, still the Commonwealth was required, under the statutes and under the indictment to prove that there was insurance on this property, in order to convict the defendants. This property was heavily insured. The building belonged to a sister of the defendants. She gave $6,500.00 for it. She claims to have expended $2,000.00 in improvements upon it, and she owned $6,000.00, secured by lien on it. The building was insured for $20,000.00 against loss by fire. The proof showed that if completely destroyed, it would cost about $30,000.00 to rebuild it. Defendants had $19,500.00 insurance upon their stock, fixtures, machinery, etc. They claim that this machinery, stock and fixtures had been inventoried about sixty days before the fire, and that the inventory showed it was worth over $25,000.00. For the Commonwealth, it is claimed that the value of the stock, fixtures and machinery was very much less than the insurance defendants had upon it. Several candy manufacturers testified for the defendants that the prices fixed by them in this inventory were reasonable, but, of course, they were not able to say that the goods were in the house. The defendants were shown to be in debt, and it was established that executions were then in the hands of the sheriff that totaled $600.00. The defendants cite the cases of Saylor v. Com., 158 Ky. 768, 166 S. W. 254; Springs v. Com., 198 Ky. 258, 248 S. W. 535; Meyers v. Com., 194 Ky. 523, 240 S. W. 71; Pedigo v. Com., 103 Ky. 41, 44 S. W. 143; 19 R. 1723, 42 L. R. A. 432, 82 Am. St. Rep. 566; DeBoe v. Com., 146 Ky. 696, 143 S. W. 39, and insist

that when the evidence in this case is measured by the rules announced in those cases, there is not sufficient evidence to submit this case to the jury, or to support the verdict, and that they were entitled to a directed acquittal.

The Pedigo case was reversed because of the admission of incompetent evidence. The DeBoe case was reversed because the conviction was had upon the unsupported testimony of an accomplice. In the Saylor case, one Bud Collins had killed Mack Bailey, and Saylor was charged with having conspired with Collins in this. The evidence showed that at the time of this killing, Saylor was endeavoring to get Collins to go home, and that when Collins started to get off his mule, Saylor endeavored to prevent it by catching Collins by the arm. The only evidence connecting Saylor with this killing was that he was with Collins, and the evidence of one witness who testified, "I think I heard Saylor say to Collins, 'You have done what you came to do, now get away.' " None of the many others present heard this, and this court held Saylor was entitled to a directed acquittal. In the Meyers case, we find that it was reversed because the only evidence connecting Meyers with the fire was proof of trailing by bloodhounds, which standing alone, the court said was not enough to authorize a conviction. Springs v. Com., was another bloodhound case, and again this court held that evidence was not enough to convict.

Not only was there enough evidence here to submit this case to the jury, but this evidence was sufficient to sustain the conviction. The fire was of incendiary origin. The defense of the defendants was an alibi, which was overthrown by their presence in the vicinity of the fire being established, and their guilt is shown about as clearly as guilt can ever be shown in such a case. Parties contemplating the commission of crimes such as this, do not usually carry out their plans openly, and to hold that no man could be convicted unless the Commonwealth is able to establish by an eye-witness, that he set the fire, would make a dead letter of the statute.

Defendants insist the court should have given an instruction on circumstantial evidence; but in the case of Smith v. Com., 140 Ky., 599, 131 S. W., 499, we held otherwise, for there we said: .

"A conviction may be had upon circumstantial evidence alone. It is often more conclusive and satisfactory than what is called positive testimony, or

testimony out of the mouths of witnesses detailing what they personally know about the transaction being investigated. And when the evidence is partly or altogether circumstantial, the court should not give an instruction upon the subject of circumstantial evidence, leaving it to the jury to give to it such weight as they consider it entitled to.''

A similar doctrine may be found in Minniard v. Com., 158 Ky. 210, 164 S. W. 804; Strickler v. Com., 7 Ky. L. R. 226; Weatherford v. Com., 7 Ky. L. R. 827; Brady v. Com., 74 Ky. 282.

Defendants also complain of alleged bias, prejudice and misconduct on the part of one of the jurors who tried them. In support of this complaint they offered in the trial court the affidavit of the official reporter who took the testimony in this case, and that of one Orville Lake, a convicted felon who happened to be in the prisoners' cage adjacent to the jury room where the acts to establish such alleged misconduct and bias are said to have taken place, and been displayed during the deliberations of the jury in this case, and in so-called rebuttal of the counter-affidavits of the Commonwealth the affidavits of three of the other jurors. The affidavit of the official reporter shows that Henry J. Herberger, the juror of whom complaint is made, when asked on his voir dire if he knew ''the defendants, Raymond and Halvin C. Wolf *personally*'' remained silent, which action on his part must be construed as though he had answered in the negative.

The affidavit of Orville Lake sets out facts showing that he was in a position to hear what went on in the jury room during the deliberations of the jury in this case. It then states that during these deliberations he heard Herberger say, ''I know the defendants and their father, and if you knew these birds like I do, you would vote with me to find them guilty,'' and further said in substance that if the defendants would waive their right to insurance he would be willing to vote to find them not guilty. After these affidavits had ben filed, the Commonwealth filed the counter-affidavits of Fred T. Coffee and Herberger. Coffee's affidavit shows that Lake, at all the times here involved, was a convicted felon. Herberger's affidavit denies *in toto the* facts alleged in Lake's affidavit, and further avers that he did not and never knew the defendants and that he knew their father but slightly, if at all.

The defendants then filed the affidavits of three other jurors of the panel which tried the defendants. The affidavit of one of these jurors corroborates Lake's affidavit, but those of the other two only go to show that Herberger displayed some heat in the arguments in the jury room.

It will be noted that, conceding the truth of Lake's statement that he heard Herberger say, "If you knew these birds like I do," such remark on Herberger's part is not inconsistent with a negative answer to the question asked him, "Do you know the defendants Raymond or Halvin C. Wolf, personally?" Herberger was not asked if he had ever heard of these defendants or if he knew of their reputation, or if he had any prejudice against them. Indeed, the only questions he was asked by the Commonwealth are the one indicated and another asking if he knew about the fire appellants were charged with starting. The defendants contented themselves with asking him only about his occupation. It is a matter of common observation that we often form an opinion of others without knowing them *personally,* and that in communicating such opinions, we say, "If you knew him like I do," without meaning thereby to convey the impression that we know such individual personally, or otherwise than by reputation or observation. It is not shown, then, that Herberger was guilty of any misconduct in remaining silent when asked if he knew the defendants personally. It was Herberger's duty to stand up for what he thought was right in the jury room, and though courtesy to his fellow jurymen might have counselled less heat on his part, it cannot be said that the heat he did display was engendered for any other reason than the convictions he entertained, founded on the evidence he had heard in the case.

Further, it is settled that while a juror's affidavit or testimony will not be received to impeach a verdict or to impeach a fellow juror's conduct, it is admissible to support a verdict which some one is attempting to impeach by other testimony. Gleason v. Com., 145 Ky. 128, 140 S. W. 63. Section 272, Criminal Code, provides: "A juror can not be examined to establish a ground for a new trial, except it be to establish that the verdict was made by lot." In the light of these authorities, it is obvious that the affidavits of the three fellow jurors of Herberger can not be considered at all on the question before us. The trial court then had before it as competent evi-

dence bearing on the alleged misconduct and bias of Herberger only the affidavits of Herberger himself and of Orville Lake, a convicted felon.

In Allen v. Com., 175 Ky. 46, 193 S. W. 650, where the facts showing alleged bias, prejudice and misconduct were far stronger than here, the court said that the trial court did not abuse its discretion in denying a new trial where the character of the affiants who alleged the juror's bias was impeached and the juror denied any prejudice. We there said:

> "In the disposition of a matter of this kind this court must necessarily rely to a large extent upon the sound discretion of the trial court. The trial judge had seen and observed the juror who is assailed and observed his conduct during the trial, and is acquainted with his character, as well as the witnesses who make the charges against him. This court will not interfere with the discretion of the trial court in such a matter, unless it is evident that it came to an erroneous conclusion, and a fair trial had not been had because of the bias of the juror. Mansfield v. Com., 163 Ky. 488, 174 S. W. 16; Brannon v. Com., 162 Ky. 353, 172 S. W. 703, L. R. A. 1915D, 569; Hendrickson v. Com., 165 Ky. 665, 177 S. W. 438."

And so here the character of Lake was impeached: Herberger denied any bias, prejudice or misconduct. The trial judge saw and observed Herberger and his conduct during the trial. He was acquainted with Herberger's character as well as that of Lake who makes the charge against him. We can not say that it is evident that the trial court came to an erroneous conclusion in this matter, or that a fair trial has not been had by the defendants on this account. We will, therefore not interfere with the trial court's discretion in overruling the contentions of the defendants in this respect.

Defendants complain of certain alleged misconduct of the Commonwealth's attorney in his argument to the jury, but as that was not embodied in the bill of exceptions, we can not consider it. We have often announced this rule, and in the case of Hopkins v. Com., 210 Ky. 378, 275 S. W. 881, we gave the reason for this rule. Defendants complain of certain allleged misconduct of the Commonwealth's attorney in the cross-examination of one of

them. This interrogation was such that the record shows the trial judge said of it: "I think the manner of the Commonwealth's attorney is objectionable. I think according to modern ideas that the truth is more quickly elicited on cross-examination without brow-beating or any peculiar emphasis being brought to bear." However, as soon as the defendants objected, the court sustained the objection. The defendants moved to exclude certain evidence, and there is nothing in the record to show what action was taken.

In Simmons v. Com., 207 Ky. 570, 269 S. W. 732, we said:

"When a question is asked by the Commonwealth, if the defendant desires to object to it, he should do so, and should insist that the court rule upon the objection. If no ruling is obtained, then the objection is waived. . . . If the court does not then rule on the objection or the court's ruling should be adverse to the defendant, the defendant should reserve an exception. Unless that is done, the error is not reviewable in this court."

While the Commonwealth was unable to produce any witness who saw these defendants light and place in this building the fire traps that ignited it, still, the Commonwealth did prove the fire traps were there, and did produce evidence that the defendants were in the vicinity of the fire at an unusual hour of the night, and did establish such an array of circumstances pointing to their guilt, that the jury's verdict should not be disturbed.

The judgment is affirmed.