## Rucker, et al. v. Commonwealth.

(Decided September 29, 1916.)

### Appeal from Pike Circuit Court.

1.  Indictment and Information—Sufficiency.—An indictment which charges the two named defendants and another whose name is unknown to the grand jury with shooting and killing the decedent, but that it is unknown to the grand jury which of the three actually did the shooting, and that the other two were at the time present and aiding, assisting, counseling and advising the one so shooting, to shoot and kill the decedent, is sufficient.

2.  Criminal Law—Instructions.—Evidence examined and held sufficient to authorize the giving of an instruction on the question of aiding and abetting and conspiracy.

3.  Criminal Law—Instructions.—Although the defendants were entitled to an instruction embracing their theory of the case under the evidence, the failure to give such instruction was not prejudicial error where the instructions given gave them the full benefit of the plea of self-defense and the jury were required to believe before a conviction could be had that the named defendants and the unknown person were acting in concert and that they aided, abetted, counselled and advised the said unknown defendant in the shooting.

4.  Criminal Law—Appeal and Error.—The failure to define "felonious" and "wilfully" is not reversible error.

ROSCOE VANOVER and J. S. CLINE for appellants.

M. M. LOGAN, Attorney General, and D. O. MYATT, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY JUDGE TURNER—Affirming.

Appellants, Rucker and Anderson, were jointly indicted in the Pike circuit court charged with the murder of Walter Jewell, or Newell. It is charged that the two defendants named and some other person, whose name was unknown to the grand jury, committed the crime.

In a second count it was charged that the two defendants named, and some other person, whose name was unknown to the grand jury, or some one or more of them, which one or ones being to the grand jury unknown, killed and murdered the said Jewell by shooting and wounding him, and that each of the named defendants and said unknown person were at the time present and each near enough to, and did aid, assist,

abet, encourage, counsel, advise and command the one or ones so shooting and killing said Jewell or Newell to so shoot and kill him; and that said named defendants and the said unknown person conspired and confederated and banded themselves together for the purpose of killing or murdering the said Jewell or Newell in the manner aforesaid, and in furtherance of said conspiracy did shoot and kill him as aforesaid.

At their joint trial the two named defendants were found guilty on the second count and they prosecute this appeal.

The contention that the indictment is insufficient cannot be sustained; it is clearly and accurately stated in the second count that although it is not known to the grand jury which of the three actually did the shooting which resulted in Newell's death, that the other two were at the time present and aiding, assisting, counseling and advising the one so shooting, to shoot and kill said Newell. Every essential element in the crime of aiding and abetting is set forth; it is charged that they were present, that they aided, abetted, counseled and advised the one doing the shooting, and we do not see how a good indictment against two persons for aiding and abetting another, whose name and identity was unknown, could be drawn if this one is insufficient.

Along Pond Creek in Pike county there is a railroad and on this railroad there are several mining operations. At or near one of these places the negroes were having a dance at a restaurant. The appellants worked at a mining operation nearby, but not immediately at the place of the dance, and they each attended the dance, Rucker going to it early in the evening and Anderson going later as he had promised Rucker to do. Rucker's divorced wife lived near the restaurant where the dance was held and Newell boarded at her place. In some way, which is not clear from the record, Rucker and Newell had some altercation about the time the dance closed, and out in the front of the restaurant Rucker fired three shots at Newell, one of which wounded him slightly in the leg. Immediately after this Newell went into the restaurant and Rucker and Anderson started down the railroad toward their homes. After they had gone down the railroad Newell came out of the restaurant and went in the same direction appellants had gone and overtook them some fifty or seventy-five

yards from the place of the first difficulty; there the
three got into an altercation and each of the appellants
for a time had hold of Newell, or hold of a Winchester
gun, which they claimed he had, it being their conten-
tion that he followed them down the railroad with the
Winchester gun, and that they took hold of him and
the gun to prevent his shooting; but there is evidence in
the record to the effect that he asked them to let him
loose so he could go back up the railroad from whence
he had come, but that they insisted upon his going down
the railroad and undertook to force him to go with them.
While they were engaged in this altercation, another
person, whose identity is not shown by the record, ap-
peared on the scene, and in their wrestle and tussle,
Newell was forced or shoved against this unknown per-
son and he was pushed or forced over the bank of the
railroad or creek, and when he got up, while one or both
of the appellants still had hold of Newell, or of the gun,
this unknown party shot Newell in the back of the head
with a pistol and he sank down and died in a few
moments. Immediately after the shooting the two ap-
pellants went in one direction and the unknown person
in another, but the unidentified person returned shortly
to where the body of Newell was lying and placed the
Winchester gun across his leg and then again disap-
peared and has not been apprehended.

There is some evidence in the record that after the
first difficulty at the restaurant that appellants and an-
other person started down the railroad together, that
there were three instead of only two of them.

Appellants in their testimony each say that the un-
known person referred to in the indictment was another
negro by the name of Joe Shelton, and that he did the
shooting that resulted in Newell's death, although one
or more witnesses for the Commonwealth, who were
near at the time, testified that they knew Joe Shelton
and that the man who did the shooting was not Joe
Shelton, but that the shooting was done by a man un-
known to them, or at least by one they could not identify.

As we understand appellant's brief, the chief com-
plaint of the instructions is not so much to their form,
but to the fact that they submitted to the jury the
question of aiding and abetting and of conspiracy, when
there was no evidence to justify it.

The evidence tended strongly to show not only that
the two appellants met at the dance by pre-arrangement

between them, but that they and the unknown person left the restaurant and place of the first difficulty together; that at least two of them were in a struggle with the decedent and either had hold of him or of the gun which he had at the time, or immediately before the shooting took place, and all the facts and circumstances shown in evidence were sufficient to authorize the jury to infer that the parties were acting in concert; and it therefore follows that the action of the court in giving this instruction was proper.

Appellants also insist that they were entitled to the whole law of the case, and that it was the duty of the court to have instructed the jury, in substance, that if the decedent assaulted them with a Winchester rifle and the jury believed that appellants were in good faith attempting to disarm the decedent and were using no more force than was necessary to protect themselves from death or great bodily harm at his hands, and that the unknown person was not acting in concert with appellants when he entered the conflict and fired the shot that killed decedent, the jury should find them not guilty.

The instruction for which appellants now contend would have embraced their theory of the case, and would have been proper. But the question remains, was the failure to give such an instruction prejudicial error? Under the instructions that were given the defendants were given the full benefit of the plea of self defense, and the jury were required to believe before there could be a conviction that the appellants and the unknown person were acting in concert and that they aided, abetted, counseled and advised the said unknown person in the shooting. Clearly the failure to give the instruction indicated was not prejudicial.

It is further complained that the lower court failed to define "feloniously" and "wilfully" in the instructions; but this oversight has been often held by this court not to be reversible error.

On the whole case we think appellants have had a fair trial, and the judgment is affirmed.