## Crabtree v. Commonwealth.
(Decided Oct. 4, 1935.)

E. BERTRAM for appellant.

BAILEY P. WOOTTON, Attorney General, and RAY L. MURPHY, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY JUDGE PERRY—Reversing.

The appellant, Chester Crabtree, was jointly indicted with his father, Hiram Crabtree, and two brothers, Charlie and Wilson Crabtree, charging them with

the offense of arson, committed, to wit, by feloniously setting fire to and burning a barn, the property of Al Shelton.

Upon his trial, he and Wilson Crabtree were convicted and sentenced to three years' imprisonment. Hiram Crabtree and Charlie Crabtree were acquitted. Also, it developing that Wilson Crabtree was at the time of his charged commission of the offense an infant then sixteen years of age, and that the proper orders had not been made in the juvenile court giving the trial court jurisdiction, his judgment of conviction therein was set aside.

The evidence in the case shows that at about 8 o'clock on the evening of September 14, 1934, Al Shelton discovered his barn was on fire, which, together with its contents, was soon burned down and destroyed.

Hiram Crabtree and Al Shelton were neighbors, residing about one-half mile apart in Wayne county, Ky., at a place known as Stop. It appears that they had thus lived for several years on friendly terms and without friction or trouble between their families.

Within an hour or so after the fire, J. M. Burke was telephoned by Shelton to bring his bloodhound to the place for the purpose of trailing the tracks of a supposed incendiary. There was no evidence that the appellant or any strangers were about the barn during the day or shortly before its burning was discovered that evening. The barn was located some twenty or thirty feet from the public highway and but a short distance from Shelton's farm residence thereon. Shelton testifies that there was frequent traveling by the public up and down the highway, but none of the travelers appeared to linger on the highway about his place except the Crabtree boys, some of whom he testifies would even tease his dog.

It appears that Mr. Burke, in response to Shelton's call, shortly appeared on the scene at about 10 o'clock, when he put his hound to work to trail the suspected offender. Shelton testifies that this fire had started in a back corner of the hay loft, but Burke testifies that he went in and got his dog started not there, but around next to the barn, where they said nobody had been, when "he took up the same road we had come and we come

to a fellow's house and he went in the yard and on the end of the porch. They said Mr. Akron lived there, and he then turned and went back down to the main road and turned and went up the road. He then went to Hiram Crabtree's. He attempted to go in the gate, but was met by two big dogs and he didn't go any further." In answer to the question, "Tell the jury whether or not he fixed the trail there at Crabtree's?" he answered, "Yes, sir. I took him out in the road in front of another house about sixty or seventy yards from there and he turned right back to the same place." By way of explaining the remarkable feat, he stated he was so familiar with the habits of his dog that he could tell when the trail reached the end and quit, when the dog would stop (as he did on this occasion) and he would be unable to get him to trail any further.

This evidence was introduced by the commonwealth without objection made to its admission as incompetent, because introduced without its having been first shown that the dog was qualified in respect to his pedigree and tested training to follow human beings by their tracks.

The commonwealth further introduced the witnesses Prentice Southwood and Less Harmon, deputy sheriffs of Wayne county, who each testifies that when they arrested the appellant in December, 1934, about three months after the fire, for operating a still, the appellant at such time tried to get them to tell who it was had "turned them up," to which they had replied, no one, that they had just found their still, which they did not believe, but stated that "it laid between Al Shelton and Ezra Kennedy" and that "the s. o. b. who turned them up would have to suffer." The witness Harmon said that "Chester had pointed to Mr. Shelton's house and said 'that g. d. s. b. turned us up and he will have to suffer.' "

The evidence against the appellant was all purely circumstantial and practically consisted of that given as to the trailing of the bloodhound and these statements, testified by the deputy sheriffs as "threats" made by the appellant against Shelton in December or some three months after his barn had burned, and at a time when he was being arrested in a raid made by the deputies upon their moonshine still. The threats, if made when and under the circumstances stated, were manifestly directed by the appellant at Shelton out of re-

sentment for his suspected part in "turning him up" and were clearly meant to express appellant's intention to thereafter injure or avenge himself upon Shelton, rather than to be construed as an admission of guilt for an injury previously done him.

Appellant, having been convicted of burning the barn upon this evidence, given as to the hound's performance and alleged "threats" as testified to by the deputies, prosecutes this appeal, and complains that the jury's verdict based thereon was both contrary to law and flagrantly against the evidence.

As to the first of these objections, it is argued that the evidence given as to the trailing by the bloodhound of human tracks leading to the appellant's home as fixing suspicion on him, as the incendiary, was incompetent, for the reason that it was admitted without proof being first introduced as to the pedigree, training and experience of the dog, showing him qualified to perform the trailing service it was here attempted to have him render.

Appellant's contention in this we conceive would be well taken had the question been timely raised by objection made to its introduction when offered in the trial court and an exception taken to its admission. Blair v. Commonwealth, 181 Ky. 218, 204 S. W. 67; Pedigo v. Commonwealth, 103 Ky. 41, 44 S. W. 143, 19 Ky. Law Rep. 1723, 42 L. R. A. 432, 82 Am. St. Rep. 566. However, the evidence wholly fails to show that appellant objected to the introduction of any of the evidence detailing the trailing done by the dog, before its qualification was shown for its proper performance of the service, and we are not now, upon the objection here for the first time made to its competency and admission, authorized to declare its admission by the trial court a reversible error.

However, treating Burke's testimony as to the trailing performance of his dog, in leading from the barn to appellant's home, as part of the evidence before us, the next question that arises is: What effect should be given the testimony after it has been introduced? In the case of Meyers v. Commonwealth, 194 Ky. 523, 240 S. W. 71, 73, we said:

"With but few exceptions, * * * the various

courts of this country, before which the question has arisen for determination, have held that the unsupported testimony of the trailing of bloodhounds is not sufficient to authorize a conviction, and this, too, although their expertness and efficiency as well as accuracy may be established beyond question. * * *

"Following the holding of the great numerical preponderance of the cases, which also conform to our conception of the correct rule, we have concluded to adopt the view that proof of trailing by bloodhounds standing alone is insufficient to authorize a conviction, for, after all, the trailing of the dogs is in the nature of expert testimony, which, when given by trained and educated persons, is regarded with more or less disfavor and classed as among the weakest character of testimony."

As to the appellant's second assignment of error, that the verdict was flagrantly against the evidence, it may be said that the only other evidence even remotely tending to connect the appellant with the commission of the crime, if it does, was his alleged threats against Shelton made to the deputy sheriffs when arresting him some three months after the barn burned, while the officers were raiding his moonshine still, when the appellant, they testified, stated that his then arrest was due to his having "been turned up" either by Shelton (whose barn had previously burned) or Kennedy, and that if Shelton had "turned him up," he would have to suffer for it. Certainly this language, at such time used by him and testified to as a threat against Shelton, whom he blamed for his arrest, could not be interpreted as an admission serving to connect him with the former burning of Shelton's barn, or as furnishing motive therefor, even conceding that it manifested his then hostile feeling towards Shelton, as it could only be construed as a threat or a declaration of his purpose to thereafter wreak vengeance upon Shelton for having "turned him up" for moonshining, for which he was then arrested by the officers to whom these statements, they testify, were made, and in nowise tends to show a hostile state of feeling towards Shelton at the earlier time his barn was burned. Appellant denied the making of any such statements.

Further, it is to be noted that the corpus delicti of this charged offense was never itself established by any conclusive evidence. Only Shelton, its owner, states that he suspects the burning of his barn was of incendiary origin, as he is at a loss to otherwise account for it, though neither he nor any other witness testifies that the appellant or any other person was seen nearby or in the vicinity of the barn that day or near the time the fire started.

It is a well-settled rule of criminal law that in criminal prosecutions there must be some competent proof of the corpus delicti, else the prosecution must fail. It was here contended that, as under the circumstances here shown, there was no other way in which to account for the fire's having originated in the barn, that it must have been maliciously set on fire by some one. The corpus delicti in arson consists in proof of both the burning and of a criminal agency in causing it. We here find no substantial evidence of any criminal agency having been employed in the burning of Shelton's barn. We deem it not sufficient for establishing the criminal act of its having been maliciously burned to merely show circumstances attending its burning, which in themselves fail to show a cause therefor. Of course, such effect of its burning must have followed a cause, but it does not follow such cause need have been one of criminal agency. But, even conceding arguendo that the corpus delicti of the charged arson was established, we do not (after a careful consideration of all the evidence) think that it tends to substantially connect the appellant with the perpetration of the offense. Even when considering together appellant's alleged threat made against Shelton and the evidence pertaining to the testified trailing of appellant by the bloodhound, we do not deem such evidence sufficient to sustain the verdict found against appellant. The threats, as made by appellant in the case at bar, if true, would be evidence tending to show his then state of mind towards Shelton and as constituting a motive for the perpetration of some later offense against him, but it is difficult to see how evidence of such threats, which showed a then hostile feeling against Shelton, could have constituted a motive for appellant's earlier perpetration of the offense occurring months before such state of feeling arose.

The appellant may have been guilty of perpetrating this charged act of arson. Of this, under the evidence before us, he at best can only be suspected, and one cannot be subjected to the penalties of the criminal law upon mere speculation and suspicion. For this there must be some tangible, substantial evidence of his guilt. After a careful study of the whole record, we find this character of evidence lacking. The evidence here was entirely circumstantial, and while conviction of one charged with crime may be had upon circumstantial evidence alone, in each case so holding it is said that the circumstantial evidence must be of such character as to exclude every reasonable hypothesis of his innocence. Sprouse v. Commonwealth, 132 Ky. 269, 116 S. W. 344; Rucker v. Commonwealth, 171 Ky. 276, 188 S. W. 367; Meredith v. Commonwealth, 192 Ky. 377, 233 S. W. 793; Taylor v. Commonwealth, 182 Ky. 728, 207 S. W. 456; Springs v. Commonwealth, 198 Ky. 258, 248 S. W. 535.

We are satisfied that the testimony falls short of establishing appellant's guilt of the crime charged. It results, therefore, that the trial court erred in not instructing the jury to find him not guilty. The judgment is therefore reversed for a new trial, and for proceedings consistent with this opinion.