## Watson v. Commonwealth.

Oct. 13, 1944.

J. E. Stephens for appellant.

Eldon S. Dummit, Attorney General, and Guy H. Herdman, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY JUDGE SIMS—Affirming.

Appellant, Jake Watson, was jointly indicted with Ale C. Watson, Homer, Cecil and Rich Jones, for the wilful murder of Ruben Coffey. The indictment charged them with conspiring together to kill Coffey and averred they produced his death by shooting him. Upon a separate trial Jake Watson was convicted and his punishment fixed at confinement in the penitentiary for life. The sole ground relied upon in his brief for reversing the judgment is that the evidence is entirely circumstantial and is not sufficient to sustain the verdict.

Ale C. Watson the 13 year old son of appellant, was convicted on a former trial and is now in the reform school serving a life sentence. Cecil Jones was acquitted on his trial, and on motion of the Commonwealth Attorney the indictment was dismissed as to Homer and Rich Jones.

Watson and deceased, Coffey, lived some four or four and a half miles apart in McCreary County in the neighborhood of the Co-operative Coal Mine. At one time Watson had married a daughter of Coffey, but that seems to have been a good many years ago, and as we gather from the record, she was not his wife at the time of the killing. Coffey left his home on Wednesday, March 17, 1943, with a hunting sack over his shoulder in which he carried corn, as he was looking for some of his hogs which had strayed. On the following Friday his body was found on a hill in a thicket about 450 feet from Watson's home and some 20 feet above a path leading through the woods.

He had been shot and there were 28 holes in his head, some as large as "your finger" which entered the back of his head on the right side and his right eye was shot out. Corn had been scattered something like 30 feet down the hill from where the body lay and his walking stick was near-by.

Some ten days after the killing an examination was made of the territory where the body was discovered. This showed a large sloping rock, from waist to shoulder high, about 150 feet from Watson's house and 405 feet from the place Coffey's body was found. There were no indications behind the rock where any person had waited, but bushes bore evidence of having been cut by two shots fired from behind the rock, one at a height of about 6 feet and another at about 12 inches from the ground. Some shot were extracted from the bushes and they "looked like #3 or something like that." There was no blood where his body was found, "just a little spot on his face the size of a silver dollar." But to the right of the big rock and about 30 feet therefrom there was a small rock 8 or 10 inches high on which there was a stain which several witnesses testified appeared to have been made by a "double handful" of blood. The body was found in a thicket and there was no evidence of shot having cut bushes there and it is evident deceased was shot near the big rock and walked or was carried to the place where his body was found.

Elvin Rexroat, a deputy sheriff, testified without objection that after the killing he took a gun and some shells from Watson's home. The shells were introduced in evidence and some of them were loaded with No. 3 shot. One shell had been reloaded with pellets, which he

testified appeared to have been manufactured in a home-made mold, and held only 9 of such pellets. Appellant admitted that these shells came from his home, but denied he had reloaded that particular shell.

The record shows that in 1939, Watson was sent to prison, but it does not disclose the crime of which he was convicted. He served fifteen months and upon returning home made threats against Coffey and a man named Anderson, the witnesses who prosecuted him. Jim Clark, appellant's friend, testified that soon after being released from prison Watson said that Coffey helped prosecute him and "he would kill Coffey if he lived." The day before Coffey's body was found Watson asked Ralph Winchester, an 18 year old boy, to stay all night at his home with his family "as he was figuring on having a little trouble." It is argued that this indicated Watson expected to be arrested and confined in jail, which he was.

Eph Jones testified that before the killing Jake Watson wanted to borrow his shotgun "to hunt a day or two." When pressed by Eph as to his insistence in wanting to borrow the gun Watson replied, "I don't care to tell you." Watson had told Eph about a year after returning from prison that he had seen Coffey around his (Watson's) house "on his all fours with a gun in his hand" and had said he would have killed Coffey then if he had had a gun. Lewis Gregory testified that after the killing Watson told him that Coffey "made one trip too many times." Herbert Coffey, a son of the deceased, testified that before the murder his father had procured a warrant to search Watson's house. However, it is not shown just when this search warrant was taken out, or what was sought to be found in Watson's house.

Appellant testified that he had no connection with the crime. He denied the threats and testified that he harbored no ill-feelings against Coffey. He proved by Cecil Jones that on the day Coffey left home and was killed that Cecil saw Coffey at 1:30 o'clock in the afternoon about two miles from Watson's home and that it would have taken Coffey approximately 30 minutes to walk these two miles. Cecil knew it was 1:30 because Sam Corder's boy asked him the time. This was very important testimony for appellant as he proved he reported for work at the mines at 1:40 on the afternoon

of this day, entered the mines at 2 o'clock and worked until midnight; that it took him from 45 to 55 minutes to walk from his home to the mines.

The weakness in Cecil's testimony is that he and Watson had both been in jail charged with this crime, yet he testified he had never told Watson that he saw Coffey at the time and place above indicated. This was the cornerstone of appellant's defense and it is almost inconceivable that Cecil would not have mentioned this most important fact to Watson while they were both in jail awaiting trial.

Appellant cites such cases as Tarkaney v. Com., 240 Ky. 790, 43 S. W. 2d 34; Helton v. Com., 242 Ky. 386, 46 S. W. 2d 487, and Crabtree v. Com., 260 Ky. 575, 86 S. W. 2d 301, as upholding the rule that while a conviction may be had on circumstantial evidence alone, such evidence must be of the character which will exclude every hypothesis of innocence and may not be reconciled with the presumption of innocence which attends every accused person. There can be no doubt of this being the law, but this record shows that the evidence adduced against defendant meets all the requirements set forth in the above cases.

Without reiterating the evidence: There was testimony of motive—revenge; there was testimony of threats made by Watson before the killing, as well as statements made afterwards which tend to connect him with the crime; shells were found in his home containing shot and pellets of unusual size, similar to those which were fired into deceased's head. The crime occurred less than two hundred feet from Watson's house. There was testimony that he had complained of Coffey sneaking around his home, and after the body was found had said that Coffey "made one trip too many times."

It cannot be said with reason that the evidence is as consistent with appellant's innocence as it is with his guilt. Nor can it be said that the verdict was based upon speculation or surmise. The jury were justified in believing the commonwealth's evidence, and evidently they did, which welded an unbroken chain of circumstances that pointed rather conclusively toward appellant's guilt and is amply sufficient to sustain the verdict.

The judgment is affirmed.