RENDERED: DECEMBER 15, 2022
TO BE PUBLISHED

# Supreme Court of Kentucky

2021-SC-0460-DG

COMMONWEALTH OF KENTUCKY                                          APPELLANT


V.                            ON REVIEW FROM COURT OF APPEALS
                                        NO. 2019-CA-0930
                          JESSAMINE CIRCUIT COURT NO. 18-XX-0006
                          JESSAMINE DISTRICT COURT NO. 17-T-03637


ANTHONY WOODS                                                      APPELLEE


**OPINION OF THE COURT BY JUSTICE VANMETER**

**<u>REVERSING</u>**

By statute, the legislature has proscribed the operation or physical control of a motor vehicle while under the influence of alcohol or drugs. KRS[1] 189A.010(1). Our case law has utilized a four-factor test, as set forth in *Wells v. Commonwealth*, 709 S.W.2d 847 (Ky. App. 1986), to assist in the determination of whether a driver has been operating a motor vehicle within the meaning of the statute. In this case, we must determine whether the Court of Appeals erred in reversing the Jessamine District Court's judgment convicting Anthony Woods of driving under the influence ("DUI"), first offense. Because a proper application of the *Wells* factors supports Woods' conviction,

---

[1] Kentucky Revised Statutes.

we hold that the Court of Appeals erred, vacate its opinion, and reinstate Woods' conviction.

## I. Factual and Procedural Background.

At approximately 12:48 a.m. on October 3, 2017, police officer Gideon Brewer responded to a 911 call regarding a man "passed out" in a truck at the Waffle House parking lot, North Main Street, Nicholasville. When Officer Brewer arrived at the location in his cruiser, he testified that he observed headlights and brake lights illuminated on the truck. When Officer Brewer approached on foot, however, its lights were off. The car was "double-parked" across two spaces. Officer Brewer tapped on the car door and Woods remained asleep; upon tapping a second time, Woods awoke. Woods put his keys in the ignition and attempted to roll down the window, but it was already down.

Officer Brewer testified that Woods appeared under the influence. In response to questioning, Woods admitted that he had "probably four or five drinks" and that his last drink was at 10:00 or 11:00 p.m. Woods also stated, "I was down at the bar and come up here to get something to eat," and that "I was at 5 O'clock Somewhere and up there at Joe's Cock and Bull." Officer Brewer asked if that was where Woods left from to come to the Waffle House and Woods answered, "yeah." Woods did not explicitly state that he drove the truck to Waffle House and parked it there, but he said, "I just figured it would be better to stop here a minute to get on the road." Finally, Woods told Officer Brewer that he was staying at "Hometown" and planned to leave Waffle House for that location.

2

When Officer Brewer removed Woods from the vehicle, Woods' boots were off, his belt was unbuckled, and his pants were unzipped. Woods explained that he had partially unclothed after eating at the restaurant so that he could sleep comfortably. Officer Brewer administered a field sobriety test which indicated that Woods was impaired. After the first test, Woods told the officer that he could not perform additional tests. Officer Brewer then requested another officer to administer a preliminary breath test, which showed alcohol in Woods' system above the legal limit. Officer Brewer arrested Woods and charged him with DUI. Woods protested the charge, and one of the officers responded with his belief that Woods' presence in the driver's seat alone was sufficient to demonstrate control of the vehicle.

Officer Brewer acknowledged on cross-examination that he could not assess Woods' sobriety when he left the bar in Nicholasville or when he arrived at the Waffle House. Officer Brewer also acknowledged not conducting a full search of the truck for alcohol containers, nor checking the truck's engine to determine whether it was warm, which would have indicated recent operation.

The Jessamine District Court convicted Woods of DUI and the Jessamine Circuit Court affirmed, relying on the circumstantial evidence surrounding Woods' arrival at the Waffle House.[2] The Court of Appeals then granted Woods'

---

[2] The district court held a bench trial. The record indicates, as noted by the Jessamine Circuit Court, that the evidence "was thoroughly reviewed and considered by the [district] court as reflected in its findings as stated on the record," *Woods v. Commonwealth*, No. 18-XX-0006, slip op. at 7 (Jessamine Circ. Ct. May 15, 2019). The district court did not, however, make written findings of fact, but merely indicated, "Find Guilty" on its docket sheet. The Jessamine Circuit Court, by contrast, entered an Opinion extensively detailing the trial evidence. The Circuit Court, sitting

3

motion for discretionary review and reversed, finding the evidence insufficient to support Woods' conviction.  Because the Jessamine Circuit Court Clerk did not include video of the trial proceedings in its certification, the Court of Appeals made this insufficiency determination on an incomplete appellate record.  Neither party initially raised this error before the Court of Appeals.[3] When the Court of Appeals reversed, the Commonwealth filed a petition for rehearing, which was denied.  The Commonwealth subsequently moved for discretionary review in this Court.  We granted the Commonwealth's motion and now consider its arguments on appeal.

## II.    Standard of Review.

Our standard of review for a directed verdict overturning a conviction based on the insufficiency of the evidence mirrors that set forth by the U.S. Supreme Court.  This standard is "'whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *Potts v. Commonwealth*, 172 S.W.3d 345, 349 (Ky. 2005) (quoting *Jackson v. Virginia*, 443 U.S. 307, 318-19, (1979)); *see also Commonwealth v. Benham*, 816 S.W.2d

---

as an appellate court, correctly addressed the standard of review concerning the sufficiency of the evidence.

[3] The Commonwealth argues that Woods failed to substantially comply with the Kentucky Rules of Civil Procedure ("CR") in designating the appellate record.  Though Woods did not specifically denote the trial video recordings' respective dates in his designation, our rules only require that the appellant list the dates for *pre-trial* and *post-trial* video recordings.  CR 98(3).  Since Woods intended to designate recordings of the trial itself, no error occurred.  Additionally, though we find Woods' failure to correct the error to not amount to a failure of substantial compliance, we implore attorneys engaged in practice before the appellate courts to ensure they have provided a complete record for our review.  CR 73.02.

186, 187 (Ky. 1991) (holding "the test for a directed verdict is, if under the evidence as a whole, it would be clearly unreasonable for a jury to find guilt, only then the defendant is entitled to a directed verdict of acquittal[]"). "Circumstantial evidence is evidence that makes the existence of a fact more likely than not. Although circumstantial evidence must do more than point the finger of suspicion, the Commonwealth need not rule out every hypothesis except guilt beyond a reasonable doubt." *Rogers v. Commonwealth*, 315 S.W.3d 303, 311 (Ky. 2010) (internal quotations omitted).

The totality of circumstantial evidence and reasonable inferences drawn therefrom are sufficient to sustain a jury conviction against a defendant for operating a vehicle while under the influence of alcohol. *Blades v. Commonwealth*, 957 S.W.2d 246, 250 (Ky. 1997). This standard in DUI cases is the same sufficiency standard that applies to other crimes. *Id.* Since the evidence relied upon is circumstantial, that evidence must be more consistent with guilt than with innocence to sustain a conviction. *Commonwealth v. Goss*, 428 S.W.3d 619, 626 (Ky. 2014) (quoting *Collinsworth v. Commonwealth*, 476 S.W.2d 201, 202 (Ky. 1972)).

### III.    Analysis.

#### A. *Incomplete Appellate Record.*

The Commonwealth's initial argument is that the Court of Appeals should have summarily affirmed the trial court's conviction because the trial video recordings were absent from the appellate record. Indeed, in *Commonwealth v. Thompson*, 697 S.W.2d 143, 145 (Ky. 1985), this Court

stated that "when the complete record is not before the appellate court, that court must assume that the omitted record supports the decision of the trial court." Further, in *Commonwealth v. Roth*, we reiterated that

> [a] lower court's discussion of the facts cannot satisfy our obligation to read or view the trial proceeding, especially where, as here, the sole issue to be resolved on appeal is the sufficiency of the evidence presented to the jury at trial. It would be an abdication of our constitutional duty as a reviewing court were we to accept on faith the factual assertions as summarized in the decisions of the reviewing courts below.

567 S.W.3d 591, 594-95 (Ky. 2019). Our precedent is clear. When an appellate court does not have a complete record before it, that court *must* assume that the omitted portion supports the trial court's decision. *Thompson*, 697 S.W.2d at 145. Therefore, the Court of Appeals erred when it overturned the trial court's conviction without the record before it.[4] In such a situation, we would be justified in vacating its opinion and remanding to that court with directions to obtain the missing record and reconsider the case accordingly. However, since the standard of review is identical for both this Court and the Court of Appeals and as a matter of judicial economy, we ordered the Jessamine Circuit Court Clerk to supplement the record with the trial's video proceedings. CR 75.08. We therefore decide this case on its merits.

---

[4] In appellate cases where the record is incomplete, the best course of action is for that court to supplement the record *sua sponte* under CR 75.08. *See Roth*, 567 S.W.3d at 594-95. If the appellate court does not take such action, then *Thompson* controls and the court must assume the omitted portion of the record supports the trial court's decision.

6

### B. KRS 189A.010 and Wells.

The controlling statute in DUI cases is KRS 189A.010: "[a] person shall not operate or be in physical control of a motor vehicle anywhere in this state . . . while under the influence of alcohol." Since the legislature did not provide definitional terms in the statute, our case law, starting with *Wells*, has developed a non-exhaustive list of factors to aid in determining a defendant's operation or physical control of a vehicle.[5] Those four factors are: (1) whether the person in the vehicle was asleep or awake; (2) whether the motor was running; (3) the location of the vehicle and all of the circumstances bearing on how the vehicle arrived at that location; and (4) the intent of the person behind the wheel. *Wells*, 709 S.W.2d at 849. Because these factors are non-exhaustive, all other direct or circumstantial evidence remains available to prove a defendant's guilt. The Commonwealth need not prove every factor to satisfy the "operation or control" element. Stated another way, the weight to be afforded any factor depends on the facts and circumstances of a given case.

This leads us to the Commonwealth's second argument, which is that the Court of Appeals incorrectly applied the *Wells* factors to this case in contravention of our reasoning in *Blades v. Commonwealth*, 957 S.W.2d 246, 250 (Ky. 1997). In *Blades*, we clarified that the sufficiency of the evidence

---

[5] In developing its four-factor analysis, the *Wells* court relied on two earlier Kentucky cases, *Newman v. Stinson*, 489 S.W.2d 826 (Ky. 1972), and *DeHart v. Gray*, 245 S.W.2d 434 (Ky. 1952), cases from four other jurisdictions, and James O. Pearson, Jr., Annotation, *What Constitutes Driving, Operating, or Being in Control of Motor Vehicle for Purposes of Driving While Intoxicated Statute or Ordinance*, 93 A.L.R.3d 7 (1979).

standard required to convict in DUI cases is the same as in other areas of criminal law. *Id.* Following this clarification, we overruled *Pence v. Commonwealth*, 825 S.W.2d 282 (Ky. App. 1991), because the court in that case incorrectly applied an elevated standard using the *Wells* factors. *Id.* at 249-50.

In this case, the Court of Appeals relied upon *Commonwealth v. Crosby*, 518 S.W.3d 153, 158 (Ky. App. 2017), in overturning Woods' conviction. *Crosby* involved a woman leaving a friend's party to send texts and retrieve cigarettes to smoke in her car. *Id.* at 155. The vehicle was running but still parked on the street when a patrolling officer arrested her for DUI. *Id.* The Court of Appeals upheld the lower courts' suppression of post-arrest evidence, holding that the patrolling officer did not have probable cause to arrest the defendant. *Id.* at 159.

The Court of Appeals deployed the *Wells* factors in making this determination in *Crosby*, but first noted that the facts before it were unusual. *Id.* at 157. Most DUI cases concern whether the defendant has already driven under the influence, but *Crosby* addressed whether the defendant planned to drive in the future; therefore, the fourth *Wells* "intent" factor became the most critical. *Id.* at 158. Specifically, the Court of Appeals reasoned that "[w]hen there is no evidence to determine whether a driver became intoxicated before or after parking the vehicle and was discovered before any new driving could commence . . . the fourth *Wells* factor, intention, becomes key[.]" *Crosby*, 518 S.W.3d at 158.

8

The Court of Appeals relied upon this quotation in holding that insufficient evidence was adduced to convict Woods. It largely resolved its analysis with the fourth "intention" factor. However, this case is readily distinguishable from *Crosby*. In *Crosby*, the defendant was discovered at the location where she had been drinking, but here, by contrast, Woods admitted to drinking at two prior locations before Officer Brewer discovered him. Here, Officer Brewer found Woods double-parked across two spaces at a Waffle House, an establishment that does not sell alcohol. These distinctions suggests that the third *Wells* factor, circumstances bearing on arrival, is more pertinent in this case than in *Crosby*.

Further elaboration on the third *Wells* factor, circumstances bearing on arrival, confirms that a rational trier of fact could have found Woods guilty of DUI beyond a reasonable doubt. The *Wells* court, outlining DUI convictions in other jurisdictions under circumstances wherein a driver was discovered asleep, reasoned that "the vehicle[s] in question could not have reached their locations without some form of operation. Further, the circumstances rendered it virtually impossible that anyone besides the respective defendants could have performed these maneuvers. Thus, one may reasonably conclude that various defendants did in fact operate these motor vehicles." *Wells*, 709 S.W.2d at 850. Additionally, the Court of Appeals in *Crosby* noted that "the third *Wells* factor typically supports a ruling that the defendant operated or was in control of the vehicle when there is some irregularity in where the vehicle is located[.]" *Crosby*, 518 S.W.3d at 157.

9

While the court in *Wells* referred to vehicle locations more peculiar than the one in this case,[6] it remains directly on point. Officer Brewer discovered Woods alone in his vehicle at 12:48 a.m. Woods did not explicitly say he drove from local bars to the Waffle House in his truck; however, his statements to the officer strongly implied that he did. Additionally, no other persons were with him when Officer Brewer arrived, and Woods did not state then or at trial that other persons were with him. Woods admitted he had consumed alcohol at two bars prior to arriving at the Waffle House, and the officers' sobriety tests confirmed the presence of alcohol in Woods' system. Unlike in *Wells*, where the defendant was found in a hotel parking lot, in this case Woods could not obtain alcohol at the location where he was discovered.[7] While double-parking one's vehicle is not so irregular as leaving the vehicle on a highway, as the defendant

---

[6] The *Wells* court noted:

> For example, in *Jacobson v. State*, 551 P.2d 935 (Alaska, 1976), the defendant was intoxicated and was found asleep in his parked vehicle with the motor and heater running, but two wheels of the vehicle were situated on the highway and the other two were off the pavement. In *State v. Lariviere*, 2 Conn. Cir. 221, 197 A.2d 529 (1963), the defendant's car was found in a parking lot with its engine running and was obstructing traffic. The vehicle was not in a parking slot and the defendant was asleep in the driver's seat.

709 S.W.2d at 849-50.

[7] In evaluating the evidence, the circuit court noted that "the fact that no empty alcohol containers were located in the truck and no evidence was offered that alcohol could have been purchased at Waffle House or somewhere else nearby are circumstantial evidence that [Woods] had to have consumed the alcohol prior to driving to Waffle House." *Woods v. Commonwealth*, No. 18-XX-0006 slip op. at 6. Implicit in this statement is the circuit court's recognition that the bars visited by Woods were in downtown Nicholasville and approximately 1.7 miles from the Waffle House on North Main Street. Kentucky Rules of Evidence ("KRE") 201.

did in *Blades*, this fact, in conjunction with the other evidence, is another indication that Woods drove to and arrived at Waffle House while intoxicated.

These additional circumstances and reasonable inferences drawn therefrom, when viewed in the light most favorable to the Commonwealth, afford a rational trier of fact the conclusion that Woods operated or controlled the vehicle beyond a reasonable doubt. *Potts*, 172 S.W.3d at 349 (quoting *Jackson*, 443 U.S. at 318-19; *Wells*, 709 S.W.2d at 849. Put another way, it would not be clearly unreasonable for a trier of fact to find Woods guilty of DUI. *Benham*, 816 S.W.2d at 187. The evidence is more consistent with guilt than with innocence; while Woods was found asleep in the truck, that does not negate the likelihood that he operated the motor vehicle prior to falling asleep. *Goss*, 428 S.W.3d at 626 (quoting *Collinsworth*, 476 S.W.2d at 202).

We acknowledge that Woods was discovered asleep, and that Officer Brewer did not check the truck's engine for heat nor the truck's interior for alcohol containers. But those facts are not dispositive here. The *Wells* factors aid courts in difficult cases; this case is one of them.[8] However, the standard for a directed verdict to overturn a conviction requires that it be clearly unreasonable for a fact finder to find Woods guilty of DUI. *Benham*, 816 S.W.2d at 187. That threshold is not met here.

---

[8] Woods' decision to sleep at the Waffle House was certainly a safer choice than driving to his destination. However, this choice does not alter the legal analysis regarding Woods' decision to drive under the influence from the bar to the restaurant.

## IV.   Conclusion.

Because the totality of circumstantial evidence supports Woods' conviction on the sufficiency of the evidence, and because that conviction was not clearly unreasonable from the perspective of a rational fact finder, we reverse the Court of Appeals opinion and reinstate the Jessamine District Court's judgment.

All sitting.  Minton, C.J.; Hughes, Keller and Nickell, JJ., concur. Conley, J., dissents by separate opinion in which Lambert, J., joins.

CONLEY, J., DISSENTING:  With due respect, I dissent.  A failure at the trial level to prove the *corpus delicti* stemming from a derelict investigation demands reversal of the conviction, as the Court of Appeals correctly found. Although the lower court focused on the fourth *Wells* factor—intent to operate a vehicle under the influence—to overturn the conviction, my colleagues have oriented their judgment upon the third *Wells* factor—location of the vehicle and how it arrived at its location—to uphold it.  But because there was no evidence proving in fact that Woods drove from the bar to the Waffle House, the Court must rely on inferences from circumstantial evidence.  While that is certainly legally permissible, the Court fails to consider that where the facts otherwise established in evidence are as consistent with innocence as with guilt, circumstantial evidence will not suffice to establish guilt.  *Warnell v. Commonwealth*, 246 S.W.2d 144, 148 (Ky. 1952).  Thus, the third *Wells* factor offers no salvation to Woods' conviction.

12

Before proceeding to the statutory merits, I would point out that the Commonwealth has failed to preserve its arguments before the Court. It did not argue before the Court of Appeals that *Wells* had been overruled, and it did not argue Woods failed to properly designate the record until after the Court of Appeals had ruled against it. Those being its only arguments before this Court, if we apply the traditional rules that we will not consider new arguments or abandoned arguments, that then should have ended the inquiry. Affirmance of the Court of Appeals is appropriate since there is no properly offered argument by the Commonwealth before this Court for review.

That being said, even considering the statutory merits and the *Wells* factors *arguendo*, I conclude the Commonwealth has failed to establish that Woods drove the vehicle under the influence. Every crime requires a *corpus delicti*, and in DUI cases that means proof the defendant was operating or in physical control of a vehicle while under the influence. KRS 189A.010(1). In *Denham v. Commonwealth*, it was held

> Circumstantial evidence which is as consistent with the absence of a crime as with the perpetration of the crime is insufficient to prove the corpus delicti. The same wise rule applies in respect to the proof of commission of a crime. If the facts proven may be reasonably reconciled with the presumption of innocence of the accused, guilt is not established.

40 S.W.2d 384, 386 (Ky. 1931). In *Commonwealth v. Goss*, the rule was expressed "[a] conviction obtained by circumstantial evidence cannot be sustained 'if the evidence is as consistent with innocence as with guilt.'" 428 S.W.3d 619, 628 (Ky. 2014) (quoting *Collinsworth v. Commonwealth*, 476

13

S.W.2d 201, 202 (Ky. 1972)). This rule is not incompatible with our standard of review for a directed verdict. This Court clarified in *Commonwealth v. Sawhill* that the appellate standard of review is "[i]f under the evidence as a whole it would not be clearly unreasonable for a jury to find the defendant guilty [beyond a reasonable doubt], he is not entitled to a directed verdict of acquittal." 660 S.W.2d 3, 5 (Ky. 1983) (internal quotation omitted). But if circumstantial evidence does not do anything more than tend to show the defendant is just as likely not guilty as he is guilty, then it is clearly unreasonable for a jury to find guilt beyond a reasonable doubt.

This leads to a paradox in our case law. The Court states that for convictions based on circumstantial evidence, the Commonwealth need not rule out every hypothesis except guilt beyond a reasonable doubt, citing *Rogers v. Commonwealth*, 315 S.W.3d 303, 311 (Ky. 2010). I agree. Following the citations of *Rogers*, we trace this rule principally to *Jackson v. Virginia*, 443 U.S. 307, 326 (1979), a case that relied on *Holland v. United States*, 348 U.S. 121, 137 (1954), which in turn relied on a Prohibition-era case for the first clear enunciation of the rule,

> that it is not incumbent on the prosecution to adduce positive evidence to support a negative averment the truth of which is fairly indicated by established circumstances and which, if untrue, could be readily disproved by the production of documents or other evidence probably within the defendant's possession or control.

*Rossi v. United States*, 289 U.S. 89, 91-92 (1933). That is a mouthful, but *Rossi*'s ruling rested, in laymen's terms, on the notion that if a defendant was charged with having a still for unlawful distillation of alcoholic spirits, all he

14

needed to do was show proof the still was registered and bonded to escape punishment. *Id.* at 90. *Rossi* simply held it was not the government's burden to gather proof of registration and bond for the defendant. *Holland* expanded the *Rossi* rule to tax evasion statutes and stated that circumstantial evidence of "proof of a likely source [of unreported income], from which the jury could reasonably find that the net worth increases sprang, is sufficient." *Holland, supra,* at 138. The defendants in that case argued "the Government failed to adduce adequate proof because it did not negative all the possible nontaxable sources of the alleged net worth increases—gifts, loans, inheritances, etc." *Id.* at 137. The Supreme Court ruled otherwise, and held

> Any other rule would burden the Government with investigating the many possible nontaxable sources of income, each of which is as unlikely as it is difficult to disprove. *This is not to say that the Government may disregard explanations of the defendant reasonably susceptible of being checked.* But where relevant leads are not forthcoming, the Government is not required to negate every possible source of nontaxable income, a matter peculiarly within the knowledge of the defendant.

*Id.* at 138. (Emphasis added). Finally, the Supreme Court in *Jackson* answered whether "a federal habeas corpus court must consider. . . whether there was sufficient evidence to justify a rational trier of the facts to find guilt beyond a reasonable doubt." *Jackson, supra,* at 312-13. This specifically focused on the circumstantial evidence to prove premeditation for murder. *Id.* at 324. Importantly, the defendant's argument of self-defense rested on "a series of improbable inferences from the basic facts . . ." *Id.* at 325. Thus, the Supreme Court reasoned "[o]nly under a theory that the prosecution was under an

15

affirmative duty to rule out every hypothesis except that of guilt beyond a reasonable doubt could this petitioner's challenge be sustained. That theory the Court has rejected in the past." *Id.* at 326 (citing *Holland, supra*). This review of the history of the Supreme Court rule is necessary to contextualize it; that it literally just means the Commonwealth is not under the burden to demonstrate every possible hypothesis be discounted, no matter how improbable, unlikely, or fantastical, to prove guilt beyond a *reasonable* doubt. In a word, the government does not have to discount unreasonable explanations of the facts. But, as the Supreme Court stated in *Holland*, that does not mean the government can ignore the reasonable and plausible explanations of facts.

I find this rule to be perfectly compatible with the abundance of case law in Kentucky which does affirmatively and inarguably state that "[a] conviction may be had upon circumstantial evidence, but the circumstances shown must be so unequivocal and incriminating in character as to exclude every reasonable hypothesis of the innocence of the accused." *Rose v. Commonwealth*, 385 S.W.2d 202, 204 (Ky.1964) (citing *Brown v. Commonwealth*, 340 S.W.2d 471 (Ky. 1960) and *Baird v. Commonwealth*, 45 S.W.2d 466 (Ky. 1932)). *See also Hall v. Commonwealth*, 147 S.W. 764, 767 (Ky. 1912); *Meyers v. Commonwealth*, 240 S.W. 71, 74 (Ky. 1922); *Daniels v. Commonwealth*, 240 S.W. 67, 69 (Ky. 1922); *Moore v. Commonwealth*, 3 S.W.2d 190, 191 (Ky. 1928); *Miracle v. Commonwealth*, 15 S.W.2d 429, 430 (Ky. 1929); *Woodall v. Commonwealth*, 20 S.W.2d 722, 723 (Ky. 1929); *Hays v.*

16

*Commonwealth*, 110 S.W.2d 279, 281 (Ky. 1937); *Watson v. Commonwealth*, 182 S.W.2d 901, 902 (Ky. 1944); *Abrams v. Commonwealth*, 243 S.W.2d 902, 904 (Ky. 1951); *Hibbard v. Commonwealth*, 291 S.W.2d 574, 575 (Ky. 1956). Indeed, this is only a sampling of several decades of cases applying the same point of law. And as stated, this rule is not incompatible with either Supreme Court of the United States precedent since that rule only says the government does not have to exclude unreasonable and improbable hypotheses; nor is it contrary or otherwise antagonistic to our appellate review standard. If it is unreasonable for a jury to find guilt beyond a reasonable doubt then a directed verdict is appropriate, and where circumstantial evidence does not exclude the *reasonable*, i.e., plausible, hypotheses reconcilable with the presumption of innocence then there is a failure of proof beyond a reasonable doubt. Of course, the Court must view the evidence in a light most favorable to the Commonwealth. But "inferences may not be substituted for facts." *Warnell v. Commonwealth*, 246 S.W.2d 144, 147 (Ky. 1952). "[I]f the evidence may be reconciled with the presumption of innocence, it must be done and it is the duty of the courts to give the reconciliation force and effect." *Fyffe v. Com.*, 190 S.W.2d 674, 680 (Ky. 1945).[9] If I am wrong, and this duty to give effect to the presumption of innocence, so that no man may be deprived of life and liberty

---

[9] *Fyffe* has never been overruled. Is there any who would argue it ought to be? Is the judiciary no longer "that department of government to whom the protection of the rights of the individual is by the constitution especially confided, interposing its shield between him and the sword of usurped authority, the darts of oppression, and the shafts of faction and violence[?]" St. George Tucker, *View of the Constitution of the United States With Selected Writings* 91, 293 (Liberty Fund, Inc., 1999).

except beyond a reasonable doubt of criminal conduct, is incompatible with our current appellate standard of review for a directed verdict, then I humbly submit it is we, the judiciary, that must give way to the right. *Coffin v. United States,* 156 U.S. 432, 453 (1895) (holding "the presumption of innocence in favor of the accused is the undoubted law, axiomatic and elementary[.]")

With this in mind let us review the facts anew. *Wells* counsels considering "(1) whether or not the person in the vehicle was asleep or awake; (2) whether or not the motor was running; (3) the location of the vehicle and all of the circumstances bearing on how the vehicle arrived at that location; and (4) the intent of the person behind the wheel." 709 S.W.2d at 849. It is a fact that Woods was found asleep, boots off, and pants unbuttoned. It is a fact the motor was not running, the key was not in the ignition, and Officer Brewer did not even bother to put his hand on the hood to test for the warmth of the engine. Officer Brewer testified to witnessing the headlamps of the vehicle turning off, but that does not mean anything since one need not start the engine to turn on the headlamps. Indeed, the failure to investigate the engine's warmth despite claiming to have seen the headlamps turn off defies logical explanation. There is no fact or reasonable inference from the first two factors to support the conviction. The fourth factor focuses on the intention of Woods behind the wheel. But though found in the driver's seat, Officer Brewer testified Woods was reclined and asleep. Combined with the other facts just elucidated from Officer Brewer's own testimony, there is no reasonable

18

inference to support a conclusion that Woods intended to drive under the influence.

Thus, the Court hones in on the third factor, the location of the vehicle. Noting Woods' truck was double parked in front of a Waffle House, it nonetheless acknowledges this location in and of itself is not so irregular as other instances of suspicious vehicle location, such as the middle of a public road. The Court then cites Woods' statement to Officer Brewer that he was previously at a couple bars before coming to Waffle House. The Court acknowledges that Woods did not confess to any criminal conduct. At best, his statements are an admission that might tend to prove guilt. Thankfully, there is nothing criminal about going to Waffle House after a night on the town. Nonetheless, the Court reasoned that Woods' statements "strongly implied" that he did drive from the bars to Waffle House. Finally, the Court considered that Woods was alone when he was found and never stated he was with company when he arrived at Waffle House. Of course, Woods has a right to remain silent and I find this use of his silence against him inappropriate. "[N]o inference of guilt may be drawn from a defendant's silence." *Timmons v. Commonwealth*, 555 S.W.2d 234, 237 (Ky. 1977). But "conclusions that may reasonably be drawn from evidence that *in the absence of any other explanation* points the finger of guilt directly at him" are constitutionally permissible. *Id.* (Emphasis added). Woods' admissions are not that, since there is another reasonable explanation to explain his presence at the Waffle House—he was driven by someone else. In any event, it was not incumbent on Woods to say

19

anything or offer any explanation on his manner of arrival at Waffle House or who he may have arrived with, either at the scene of arrest or at trial. It is the Commonwealth's burden to prove every element of a crime beyond reasonable doubt. *Hammond v. Commonwealth*, 504 S.W.3d 44, 52 (Ky. 2016). Officer Brewer, or some other agent for the Commonwealth, had the duty to perform an adequate investigation. But he failed to perform the simplest of inquiries by merely walking into the Waffle House and asking the employees if they were on shift when Woods arrived and if so, did they notice if he travelled alone or ate alone? Therefore, the conviction stands on the inference that Woods drove the truck from the bar to the Waffle House. That inference rests on these facts— Woods was found in a double-parked truck in front of the Waffle House, he was intoxicated, and he admitted he had previously been at two bars before arriving at the Waffle House. Do any of these facts unerringly place Woods behind the wheel, driving the truck? No. They, at worst, only point to a suspicion of guilt and that is not enough. As one leading authority said,

> It is not enough, however, that a particular hypothesis will explain all phenomena; nothing must be inferred because, if true, it would account for the facts; and if the circumstances are equally capable of solution upon any other reasonable hypothesis, it is manifest that their true moral cause is not exclusively ascertained, but remains in uncertainty; and they must therefore be discarded as conclusive presumptions of guilt.

William Wills, *An Essay on the Principles of Circumstantial Evidence* 172 (Philadelphia, T. & J.W. Johnson, 1857). There is a reasonable and plausible hypothesis for Woods' presence at the Waffle House, asleep in his truck and intoxicated, that does not include him operating a vehicle under the

20

influence—a friend drove him, and subsequently departed prior to the police's arrival. The Commonwealth could have ruled out this reasonable hypothesis if Officer Brewer had simply questioned the employees or other patrons present at the Waffle House at the time of the arrest, but it did not.

To conclude, I can find no better words than those of our predecessor court,

> Human life and liberty are much too sacred and too highly regarded in this country to be jeopardized or taken from the citizen, except upon testimony carrying conviction beyond a reasonable doubt. That rule is hoary with age, and it is and has been looked to as the bulwark of all free and enlightened governments. It is true that it is likewise essential to orderly government that the criminal should be punished, and we have held time and again that he may be convicted and punished on circumstantial evidence; but in each and every case so holding it is said that such evidence, to justify a conviction, 'must point unerringly to the guilt of the accused, and the circumstantial evidence must be of such a nature as to establish the guilt with reasonable certainty.'

*Meyers v. Com.*, 240 S.W. 71, 74 (Ky. 1922) (internal citations omitted). As I explained above, the circumstantial evidence in this case fails to satisfy the sacrosanct standard therefore it was unreasonable for the trial court to find guilt beyond a reasonable doubt. I would reverse Woods' conviction.

Respectfully, I dissent. Lambert, J., joins.

21

COUNSEL FOR APPELLANT:

Daniel Cameron
Attorney General of Kentucky

Christopher Henry
Assistant Attorney General


COUNSEL FOR APPELLEE:

David Russell Marshall